201 P.3d 1115 (2009)
2009 WY 22
In the Interest of SRB-M, a minor.
DJM, Appellant (Respondent),
v.
DM, Appellee (Petitioner). and
JM, Appellee (Respondent).
No. S-08-0129.
Supreme Court of Wyoming.
February 20, 2009.
*1116 Representing Appellant: John M. Burman, Faculty Supervisor, and Kristen M. Barton, Student Intern, UW Legal Services Program.
Representing Appellees: No appearance.
Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.
KITE, Justice.
[¶ 1] Paternal great-grandmother (DM) was the court appointed legal guardian of minor child (SRB-M). DJM, the child's mother (Mother) moved to terminate the guardianship and DM resisted the motion. The district court, without finding Mother unfit, entered an order continuing the guardianship. Mother appeals claiming that in order to deny her legal custody of her child and continue the guardianship, the district court had to find, and DM had the burden of proving, that she was an unfit parent. We reverse and remand with directions.

ISSUES
[¶ 2] We consider the following issues:
1. Whether, in order to deny a parent legal custody of her child and continue an existing non-parent guardianship, the district court must find the parent unfit.
2. Whether a non-parent guardian seeking to continue an existing guardianship has the burden of proving the parent is unfit.

FACTS
[¶ 3] In October of 2005, when SRB-M was one year old, DM filed a petition in district court to establish an emergency temporary and permanent guardianship for the child. DM alleged that the child's mother was unable to care for the child because she was incarcerated in Colorado following the revocation of her probation. DM alleged that the child's father was 19 years old and unable to care for the child. She further alleged that the child had resided with her since the child was approximately two weeks old.
[¶ 4] The district court entered an order appointing DM emergency temporary guardian and scheduled a hearing to determine the necessity for a permanent guardianship. Mother and Father consented to the appointment of DM as guardian. Following the *1117 hearing, the district court entered an order appointing DM to serve as the child's permanent guardian. The child continued to live with DM for the next two years.
[¶ 5] In September of 2007, Mother filed a motion to terminate the guardianship. She alleged that she was no longer incarcerated, could provide for her child and was able to and wished to provide a safe and loving home for the child. She further alleged that she had never been adjudicated unfit and was a fit and proper parent to have custody of her child. She also asserted that she had a fundamental right to raise her child and, absent a finding that she was unfit, the guardianship must be terminated.
[¶ 6] DM filed a response in which she asserted that it was not in the child's best interest to be placed in Mother's custody when Mother had been absent for the child's entire life. DM alleged that the child remained in need of a guardian because Mother was unable to care for the child physically or emotionally, was not a mature adult, had not psychologically or physically bonded with the child and had "forfeited her parental responsibilities to provide support." DM asked the district court to continue the guardianship and approve a parenting plan to allow Mother to reintegrate into the child's life over time.
[¶ 7] The district court convened a hearing on the motion at which Mother, DM and others testified. Father appeared at the hearing and, through counsel, concurred in DM's request to continue the guardianship. At the close of the hearing, the district court denied the petition to terminate the guardianship, concluding that it was in the child's best interest to remain with DM while allowing Mother to gradually re-introduce herself into the child's life. Subsequently, the district court entered a written order continuing the guardianship and establishing a visitation schedule "intended to gradually increase the parental responsibility of each parent while still protecting the child's need for stability and consistency." Mother appealed and filed a brief setting forth her arguments. Neither DM nor Father filed a responsive brief.

STANDARD OF REVIEW
[¶ 8] We presume the district court's findings of fact are correct and will not set them aside unless they are inconsistent with the evidence, clearly erroneous or contrary to the great weight of the evidence. KO v. LDH (In re MEO), 2006 WY 87, ¶ 17, 138 P.3d 1145, 1150 (Wyo.2006). We review a district court's conclusions of law de novo. Id. Construction of the guardianship statutes involves a question of law which we also review de novo. Id.

DISCUSSION
[¶ 9] In denying the petition to terminate the guardianship, the district court concluded that Mother's fitness as a parent was not the sole factor to be considered; rather, the best interest of the child must also be considered. Considering Mother's petition from that perspective, the district court determined the guardianship should continue for the following reasons:
a. That the biological mother's history with regard to long term relationships with men is not good; she is pregnant with her third child[,] all having three different fathers. Children need stability.
b. That the biological mother has essentially abandoned her 8-year-old child.
c. That the biological mother's decision to use drugs during her pregnancy was poor, using drugs after her pregnancy was [a] poor [decision], and she apparently cared more for the immediate gratification from the effects of the drug than for the welfare of her daughter.
d. That the urge of the biological mother to use drugs may still be present.
e. That the biological mother's mental health problems exist, but the exact nature of which is unclear to the court.
f. The mother's family support system is dubious at best.
g. That the court is concerned about the evidence demonstrating the biological mother's lack of control or maturity; especially, the mother's decision to engage in an altercation at her child's *1118 birthday party, with the guardian, and in front of the child. That [Mother] is currently in compliance with the requirements of Parole, and therefore is not a danger to her child.
h. That the guardian provides a safe home, the child is well cared for, and well fed; the child is well bonded with the guardian, the guardian provides educational and emotional development for the child, and the court is reluctant to interrupt the relationship between the guardian and the child as consistency and stability is important to the life of a child.
i. That the guardian recognizes the importance of the biological mother in the child's life which was demonstrated by initiative of arranging and transporting of the child to see the mother while incarcerated.
j. That the guardian recognizes the importance of the biological father in the child's life which was demonstrated by her commitment to arranging visitation between the father and the child on a weekly basis.
[¶ 10] Mother asserts that the order continuing the guardianship must be reversed because the district court did not find her to be an unfit parent. She claims that, absent a finding that she is unfit, the guardianship is "no longer necessary" within the meaning of the guardianship statutes and the order continuing it violates her fundamental parental right to the care, custody and control of her child. Mother contends the same reasoning this Court applied in MEO in the context of establishing a guardianship applies in the context of terminating an established guardianship; that is, a parent is the natural guardian of a child and a court-appointed one is not necessary absent a determination that the parent is unfit.
[¶ 11] It is clear from the comments made at the close of the hearing that the district court concluded this case must be treated differently than one, such as MEO, in which a party seeks to establish a guardianship. The district court specifically noted that the guardianship had been in place for two years and, given that circumstance, concluded it could not consider "in a vacuum" only Mother's "fitness as a parent" but must consider the best interest of the child. Then, without making an express finding concerning Mother's fitness, the district court concluded in essence that it was in the child's best interest to continue the guardianship while allowing Mother to gradually become more involved in the child's life.
[¶ 12] MEO involved the appointment of grandparents as the permanent guardians of their 16 year old granddaughter over the mother's objection. Prior to the involuntary guardianship proceedings, the child had been in mother's custody except for summer visits with her grandparents. The district court concluded the child's best interests would be served by appointing grandparents as her permanent guardians and entered an order to that effect despite an express finding that the mother was not an unfit parent. We said:
A parent is the natural guardian of her child. For a minor, a court appointed guardian assumes the role of a parent. That relationship is described in Wyo. Stat. Ann. § 3-2-201(e), which provides: "The guardian of a minor has the powers and responsibilities of a parent who has not been deprived of custody of his unemancipated minor child." A determination by a district court that a minor is in need of a plenary guardian is, therefore, akin to a finding that the minor needs a parent.
MEO, ¶ 47, 138 P.3d at 1158-59.
[¶ 13] We held:
[I]n the context of an involuntary guardianship proceeding where the proposed ward is a minor, a best interests inquiry is not triggered until the district court determines that the minor needs a guardian. A child with a parent has a natural guardian and is not in need of a court-appointed guardian, unless the court determines that the child's natural guardian is not fit. Thus, "[o]nce the natural parent is deemed fit, the issue of custody is decided."
Id., ¶ 55, 138 P.3d at 1161.
[¶ 14] We agree with the district court that MEO was factually different from the *1119 present case in that it involved an involuntary guardianship proceeding in which, after 16 years in her mother's care, the child was placed in her grandparents' care. In contrast, Mother in the present case voluntarily placed the child in DM's care when she was two weeks old and the question before the district court was whether the child should be removed three years later from the only home she had known and placed in Mother's custody. Despite these factual differences, however, the question in both cases given the statutory language was whether the guardianship was necessary.
[¶ 15] In MEO, the governing statute was Wyo. Stat. Ann. § 3-2-104(a) (LexisNexis 2007), which provided as follows:
§ 3-2-104. Appointment of guardian.
(a) The court may appoint a guardian if the allegations of the petition as to the status of the proposed ward and the necessity for the appointment of a guardian are proved by a preponderance of the evidence.
(b) The order appointing a guardian shall state the findings of the court, including:
(i) The reasons why the ward is in need of a guardian;
(ii) The appointment of the guardian;
(iii) The duration of the appointment for a specified term or permanent, subject to W.S. 3-3-1101;
(iv) The limited or plenary duties of the guardian.
(emphasis added.)
[¶ 16] The governing statute in the present case is Wyo. Stat. Ann. § 3-3-1101(a)(v) (LexisNexis 2007), which provides as follows:
§ 3-3-1101. Cause for termination.
(a) A guardianship shall cease, and a conservatorship shall terminate, upon the occurrence of any of the following circumstances:
(i) If upon attaining the age of majority when the ward is a minor who has not been adjudged an incompetent person or a mentally incompetent person;
(ii) The death of the ward ...;
(iii) A determination by the court that the ward is competent and capable of managing his property and affairs and that the continuance of the guardianship or conservatorship is not in his best interest;
(iv) A determination by the court that the guardian or conservator is not acting in the best interest of the ward. In such case, the court shall appoint another guardian or conservator;
(v) Upon determination by the court that the conservatorship or guardianship is no longer necessary for any other reason.
[¶ 17] Considering the meaning of the word "necessity" as used in § 3-2-104(a) in MEO, we said:
The term "necessity" means the "condition or quality of being necessary" or the "state... of being in need." Necessary generally means essential or required.
MEO, ¶ 46, 138 P.3d at 1158. We concluded a court-appointed guardian was not necessary if the child's natural guardian was deemed fit. Id., ¶ 55, 138 P.3d at 1161. Additionally, we held that consideration of the child's best interests is not triggered until the necessity of a guardian has been proven.
[¶ 18] Our holding in MEO was based in part on the important constitutional principle that a parent has a fundamental right to care for, educate and associate with his or her child. In re MLM, 682 P.2d 982, 990 (Wyo. 1984). The fundamental right of a parent to make decisions concerning the care, custody, and control of his or her children is also recognized by the United States Supreme Court. Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). Given this fundamental right, this Court has not condoned removal of a child from a fit parent. MEO, ¶ 53, 138 P.3d at 1160. "Although we have sometimes described the child's best interests as having `constitutional preeminence,' we have done so in light of an adjudication of neglect or abuse, elevating the child's interests above the individual claims of the parent." Id.
[¶ 19] Thus, in the context of appointing a guardian, we have interpreted the guardianship statutes as requiring a finding that a parent is unfit in order to *1120 permit placing a child with a non-parent over the parent's objection. We have not previously addressed the issue in the context of terminating an established guardianship. However, given the strength of our precedent requiring a showing of parental unfitness before a parent's fundamental right to the custody of his or her child can be denied, the fact that both § 3-2-104(a) (appointment of guardian) and § 3-3-1101(a)(v) (termination of guardian) require a showing of necessity, and our holding in MEO that a guardianship is not necessary if the parent is deemed fit, we conclude that a finding of parental unfitness is required in order to continue an established guardianship over a parent's objection.
[¶ 20] In reaching this result, we are influenced by the policy underlying guardianship proceedings. As stated by the Nebraska Supreme Court:
A guardianship is no more than a temporary custody arrangement established for the well-being of a child. Important here, the "appointment of a guardian is not a de facto termination of parental rights, which results in a final and complete severance of the child from the parent and removes the entire bundle of parental rights." Rather, guardianships give parents an opportunity to temporarily relieve themselves of the burdens involved in raising a child, thereby enabling parents to take those steps necessary to better their situation so they can resume custody of their child in the future.
[G]uardianships are intended to encourage parents experiencing difficulties to temporarily turn over the custody and care of their childrensafe in the knowledge that they will be able to regain custody in the future. This policy would be frustrated if guardianships were permanent or resulted in the automatic termination of parental rights, because parents would be less likely to voluntarily petition for a guardian to be appointed to care for their minor children. Therefore, children would unnecessarily be placed in jeopardy in many circumstances.
Carla R. v. Tim H. (In re D.J.), 268 Neb. 239, 682 N.W.2d 238, 246 (2004). To further these purposes, we hold that in guardianship termination proceedings, as in guardianship appointment proceedings, the biological parent is entitled to custody of his or her child absent a finding that he or she is unfit.
[¶ 21] We are aware that the termination of an established guardianship may raise concerns that do not arise when a guardian is appointed, specifically, the fact that a child may have been in a guardian's custody for many years, may be strongly attached to the guardian, and may experience significant emotional turmoil if removed from the guardian's custody. In light of these concerns, we reiterate our statement in MEO, 138 P.3d at 1159 n. 14, that under "exceptional circumstances" or for "compelling reasons" exceptions may be made to the principle that a fit parent is entitled to custody of his or her child. "Generally, these exceptions acknowledge a child's real family unit or emotional attachment, or take account of a biological parent's failure to accept parental responsibility." Id., citing Bennett v. Jeffreys, 40 N.Y.2d 543, 387 N.Y.S.2d 821, 356 N.E.2d 277, 284 (1976), where a child was in the custody of a non-parent for so long that his removal risked causing him psychological trauma and Barstad v. Frazier, 118 Wis.2d 549, 348 N.W.2d 479, 489 (1984), in which the court found "compelling reasons" to include abandonment, persistent neglect of parental responsibilities, extended disruption of parental custody, or other extraordinary circumstances drastically affecting the welfare of the child.
[¶ 22] We did not consider in MEO whether compelling reasons or exceptional circumstances existed warranting a departure from the general rule because the parties did not raise the issue and no exception appeared applicable. We are not persuaded from the record before us that this case involves the sort of exceptional circumstances or compelling reasons warranting an exception to the rule that, absent a finding of unfitness, a parent is entitled to custody of his or her child. The district court did not find Mother unfit; it, therefore, erred in ordering the guardianship to continue indefinitely.
[¶ 23] Mother also contends DM had the burden of proving that Mother was *1121 unfit. From the statutory language, it is clear Mother had the burden of proving the guardianship was no longer necessary. We conclude, however, under the facts of this case that Mother did not have the burden of proving that she was fit. Just as a non-parent seeking the appointment of a guardian over the parent's objection has the burden of proving the parent unfit by a preponderance of the evidence, a non-parent seeking to continue a guardianship over the parent's objection has the burden of proving the parent unfit.
[¶ 24] In the present case, Mother was never adjudicated to be unfit. Therefore, once Mother established that the guardianship was no longer necessary for the reasons it had been established, i.e. she was no longer incarcerated and was complying with the conditions of her parole, the parental preference principle applied and Mother was presumed to be the child's guardian. The burden then shifted to DM to rebut the presumption by showing that Mother was unfit and the guardianship was still necessary. As in the case where a non-parent seeks the appointment of guardian over the parent's objection, DM had the burden of proving Mother's unfitness by a preponderance of the evidence. This allocation of the burden of proof is consistent with the policy underlying the establishment of guardianships and the constitutional protections afforded a child's biological parent.

CONCLUSION
[¶ 25] To further the policy underlying the guardianship statutes and in recognition of a parent's fundamental right to the custody of his or her child, we conclude that in order to continue the guardianship the district court was required to find Mother unfit. DM, as the party objecting to termination of the voluntary guardianship, had the burden of proving Mother to be unfit. The district court did not find that Mother is unfit. Therefore, the district court's determination that the guardianship should continue, based solely upon a best interest analysis, was clearly erroneous.
[¶ 26] The district court's order continuing the guardianship is reversed. The case is remanded for the district court to determine from the evidence presented whether DM met her burden of proving Mother is unfit. In making that determination, the district court may wish to consider relevant evidence of Mother's circumstances since the last hearing. Should the district court find that DM proved by a preponderance of the evidence that Mother is unfit, the petition to terminate the guardianship must be denied. Absent a finding that Mother is unfit, the district court must grant the petition to terminate the guardianship. However, the district court retains the discretion to enter a reasonable order to assist the child in the transition from DM's home to Mother's home.
[¶ 27] Reversed and remanded to the district court for proceedings consistent with this opinion.