2015 WY 69

**FFJ, Appellant (Petitioner),**

v.

**ST, Appellee (Respondent).**

**No. S–14–0209.**

Supreme Court of Wyoming.

May 13, 2015.

---

Representing Appellant: Larry B. Jones of Burg Simpson Eldredge Hersh & Jardine, P.C., Cody, WY. Zenith S. Ward * of Buchhamer & Kehl, Cheyenne, WY.

Representing Appellee: Janae E. Ruppert of Woodhouse Roden Nethercott, LLC, Cheyenne, WY.

Before BURKE, C.J., and HILL, KITE, DAVIS, and FOX, JJ.

HILL, Justice.

[¶ 1]  Appellant FFJ (Father) argues that the district court's order awarding primary custody of the parties' daughter to appellee ST (Mother) was an abuse of discretion and a violation of due process.

[¶ 2]  We will affirm.

## ISSUES

[¶ 3]  We elect to adopt Mother's phrasing of the issues:

1.  Did the trial court abuse its discretion when it awarded primary residential custody of the parties' minor child to the Mother?

2.  Did the district court's determination awarding primary custody to Mother violate Father's procedural or substantive due process rights?

## FACTS

[¶ 4]  In January of 2010 Father and Mother met while both were employed at Littleton Adventist Hospital in Littleton, CO. Mother became pregnant in August of that same year and shortly thereafter the relationship began to deteriorate. Mother eventually moved back to Cheyenne while Father remained in Colorado. The parties' daughter was born in Cheyenne in May of 2011. How-

* Order Granting Motion to Withdraw as Counsel   entered on February 18, 2015.

ever, prior to giving birth, Mother had stopped communicating with Father because, as she alleged, his communications became "more harassing."

[¶ 5] Shortly after learning about his child's birth on Facebook, Father had Mother served with a copy of a *Petition to Establish Paternity, Custody, Visitation and Child Support* and a *Motion for Order for Temporary Custody and Visitation.* On July 19, 2011 a *Notice of Filing Genetic Test Results* was filed. At the request of Mother a GAL was appointed. Through the GAL's appointment Father obtained temporary visitation.

[¶ 6] The case went to trial on September 23 and 24, 2013, where Father accused Mother of parental alienation and presented evidence that she lived in a home with a convicted sex offender, her father. After two days of hearing witness testimony and accepting evidence, the district court awarded Mother primary custody subject to Father's visitation. In doing so, the district court rejected the GAL's suggested shared custody arrangement citing that the "level of cooperation and willingness to consult about a child's best interests, and compromise to that end, is altogether missing here."

[¶ 7] The district court entered its order on custody, visitation, and support on June 11, 2014. This appeal followed and more facts will be presented below as necessary.

## STANDARD OF REVIEW

[¶ 8] Our standard of review in custody matters has been often stated:

Custody, visitation, child support, and alimony are all committed to the sound discretion of the district court. *Scherer v. Scherer,* 931 P.2d 251, 253–54 (Wyo.1997); *Triggs v. Triggs,* 920 P.2d 653, 657 (Wyo. 1996); *Basolo v. Basolo,* 907 P.2d 348, 352 (Wyo.1995). It has been our consistent principle that in custody matters, the welfare and needs of the children are to be given paramount consideration. The determination of the best interests of the child is a question for the trier of fact. "We do not overturn the decision of the trial court unless we are persuaded of an

abuse of discretion or the presence of a violation of some legal principle." *Fink [v. Fink* ], 685 P.2d [34] at 36 [ (Wyo.1984) ]. *Stevens v. Stevens,* 2014 WY 23, ¶ 8, 318 P.3d 802, 805–806 (Wyo.2014) (some citations omitted).

[¶ 9] In *Pahl v. Pahl,* 2004 WY 40, ¶ 7, 87 P.3d 1250, 1253 (Wyo.2004) we also said that

"[j]udicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." [Citations omitted.]

## DISCUSSION

[¶ 10] Father argues that the district court abused its discretion when it awarded primary custody of the parties' child to Mother. Father argues generally that the district court did not consider objective criteria, that the decision was contrary to the evidence, and that the district court failed to consider important custody factors. Mother responds that the district court did not abuse its discretion and cautions that Father is asking this Court to reweigh evidence. We agree with Mother.

[¶ 11] Wyo. Stat. Ann. § 20-2-201(a) (LexisNexis 2013) provides a list of ten factors the district court must consider in determining custody:

(a) In granting a divorce, separation or annulment of a marriage or upon the establishment of paternity pursuant to W.S. 14-2-401 through 14-2-907, the court may make by decree or order any disposition of the children that appears most expedient and in the best interests of the children. In determining the best interests of the child, the court shall consider, but is not limited to, the following factors:

(i) The quality of the relationship each child has with each parent;

(ii) The ability of each parent to provide adequate care for each child throughout each period of responsibility, including arranging for each child's care by others as needed;

(iii) The relative competency and fitness of each parent;

(iv) Each parent's willingness to accept all responsibilities of parenting, including a willingness to accept care for each child at specified times and to relinquish care to the other parent at specified times;

(v) How the parents and each child can best maintain and strengthen a relationship with each other;

(vi) How the parents and each child interact and communicate with each other and how such interaction and communication may be improved;

(vii) The ability and willingness of each parent to allow the other to provide care without intrusion, respect the other parent's rights and responsibilities, including the right to privacy;

(viii) Geographic distance between the parents' residences;

(ix) The current physical and mental ability of each parent to care for each child;

(x) Any other factors the court deems necessary and relevant.

[¶ 12] Here, the district court had ample evidence before it to consider. The district court conducted a two-day trial and heard from thirteen witnesses. Both Father and Mother testified. In the end, the district court's decision letter read, in part, as follows:

> The suggestion, advocated by the GAL, that a shared custody arrangement would suit the interest of the child here must be rejected. The level of cooperation and willingness to consult about a child's best interests, and compromise to that end, is altogether missing here....
>
> ....
>
> Mother acknowledges her shortcomings, though belatedly; and was candid with the Court regarding those matters. She concedes, as she must, that her initial possessiveness may have been unproductive. She seems to understand at least by the time of trial that her differences with the father must be resolved, and that substantial time with each parent is a legal reality.

She now recognizes that her daughter will suffer if the animosity continues to result in a wall of suspicion and distrust between them. To be sure she made bad decisions and was forced by court orders to do the right thing along the way. In her case, contrasted to the father, however, she seems to recognize her shortcomings and indicates a willingness to do what is best for her daughter.

There is nothing about the father's treatment of his daughter, the classes he enrolls her in, or the care he provides that is in any way harmful. It is perhaps not the best behavior to second guess medical care, or to rely on his suspicion about mother's motives in deciding how to care for their daughter, but that represents bad decision-making not a breakdown in the role of parent. What differs is the Court's observation that the father has not given up on his sometimes near-maniacal efforts to control the mother, and the situation he is in. The thrust of his presentation at trial was to accuse, through his own and expert testimony, the mother of alienating him from his daughter. First, it should be observed that if that was in fact her goal, she has failed miserably. His daughter clearly loves him and enjoys her time with him. She is the subject of loving care and treatment; even by those that father hires to care for her. There are no indications that mother's behaviors have resulted in any denigration of his relationship with his daughter. Even the GAL, with whom the Court disagrees about shared custody concedes, by making that recommendation, that her client, this little girl, is perfectly fine in the care of either parent.

The Court was not persuaded that the expert testimony was on point here in any event. It ignored the father's motivations and conduct and the expert opinions presented had nothing to do with this child. They may have been correct about how alienation manifests itself usually, but the opinions given did not fit these facts. Moreover, as noted above, they represent the father's belief, still held at the time of trial that the mother and others were out to harm *him*. This Court's responsibility is not to him but to his daughter. In

addition he is adamant that his unilateral decision-making is in her interests and is not credible when he says he truly consulted or attempted to consult with mother. A missed call or stray conversation, if they occurred, did not amount to cooperative parenting in the child's interest particularly regarding the gravity of some of the matters, such as baptism. [Underline in original.]

When all is said and done and the Court has to give weight to many small matters of evidence, the credibility of the witnesses looms large. Father was controlling, bordering on manipulative, even in the presentation of his case in chief. He seemed to pride himself in "winning" in his answers on cross-examination. If the Court could chalk that up to nervousness, it could discount it as many litigants manifest their uncertainty and fear of a courtroom with behaviors that should be overlooked. That is not the case here. Father is a doctor, and a lawyer. He exhibits sophistication when it suits him, analyzing mother's behavior, or coming to conclusions about witnesses, even other professionals, but at the same time he supplied the Court with a bare minimum financial affidavit and supporting materials, some of them handwritten. That is not to suggest he lied about critical evidence such that his entire testimony should be disregarded. It is only to say that when weighed on the critical issues of whether he or the mother will in fact foster a positive relationship with the daughter, and cooperate in all respects for the 16 years left of this girl's minority it must be the Court's conclusion that the mother should be the primary custodian.

Two additional, but less important matters the parties spent much time on deserve comment. First, the parties make much of certain associations, be that her parent or his friend who may be unsafe based on accusations and suspicions. Neither of those poses any risk these two can't account for in their daily lives. Both know now that everything they do or [decide] about their daughters [sic] care will be scrutinized as well. Both parents are good parents and must be aware of the dangers of grandfathers and friends who might pose a risk. The accusations both make about the others [sic] should give them concern, certainly, but the Court can and will assume that good parents will not allow bad people to hurt their child. Secondly, they both assert harassment by and through law enforcement, and by phone and text message. The evidence supports both said things they should not have and called police when they should not have. Mother's concerns about foreign travel were probably unfounded, and father's scurrilous sharing of private information about mother's childhood, (she denied sexual abuse by her father) clearly inappropriate. But, as the Court noted above, it is the progress up to and including trial that matters most. No Court will ever tell a parent not to call authorities if there is possible child abuse. The evidence presented here however generally makes out more a picture of the battle between them than it does actual danger to this child. Hopefully that battle is over.

[¶ 13] While the decision letter did not go through a factor by factor analysis of § 20-2-201(a), we nevertheless conclude that the district court adequately explained its decision. "In a conventional custody determination ..., we have 'consistently and strongly urged,' but not required, that the district court reveal its reasoning." *Bingham v. Bingham,* 2007 WY 145, ¶ 16, 167 P.3d 14, 19 (Wyo.2007), citing *Produit v. Produit,* 2001 WY 123, 35 P.3d 1240, 1243 (Wyo.2001). "[W]hen a trial court is exercising its discretionary power in custody matters, it should place on the record the circumstances and factors which were crucial to the determination." *Pace v. Pace,* 2001 WY 43, ¶ 15, 22 P.3d 861, 866 (Wyo.2001). As we have previously stated, no single factor in custody decision-making is determinative. *Hayzlett v. Hayzlett,* 2007 WY 147, ¶ 10, 167 P.3d 639 at 642 (Wyo.2007). Depending on each case, different factors will present a greater need for emphasis. *Stevens,* ¶ 26, 318 P.3d at 810-11. The district court's seven-page decision letter discussed how it arrived at its decision to award Mother primary custody discussing in detail the minutiae that consumed the trial, from how to treat the child's diaper

rash to Mother's and Father's behaviors, also noting that it "has to give weight to many small matters of evidence...." Evidence from the transcript, along with the district court's decision letter, clearly indicate that it properly considered and weighed the necessary factors.

[¶ 14] Father takes issue with much of the district court's ruling. We caution Father that we will not reweigh the evidence on appeal. "This Court . . . does not reweigh evidence. Instead, we view the facts in the light most favorable to the prevailing party." *Hayzlett*, ¶ 8, 167 P.3d. at 642. Father advances a litany of reasons that the district court abused its discretion: 1) the district court did not consider that the level of cooperation between the parents is not lacking on Father's part; 2) Father will foster a positive relationship with Mother, while the reverse is not true; 3) Nothing in the record shows that Father disagrees with the child's pediatrician; 4) the district court was wrong when it found Mother's conduct improved over time—she only changed her behavior following court orders to do so; and 5) the district court improperly disregarded expert testimony on parental alienation and sex offender recidivism; 6) the district court was wrong when it found Father called the police on Mother; 7) the district court did not consider the child's relationship with her stepbrother; 8) the district court did not articulate, and should have, its consideration of Mother's false allegations about kidnapping the child to India.

[¶ 15] As to Father's specific complaints about how the district court treated evidence regarding the cooperation between Father and Mother, we decline to reweigh the evidence. We will say, however, that upon review of the record as a whole, including the trial transcripts and the district court's decision letter, we must conclude that Father's allegations are unsupported by the record. Father insists that he would foster a positive relationship with Mother but the district court heard evidence otherwise. For instance, Father baptized the parties' minor child without Mother's consent or knowledge. Father filed a civil lawsuit against Mother alleging, among other things, libel, slander,

and intentional interference. The district court heard evidence regarding Mother's difficulty in communicating with Father about the child's health and doctor's appointments. Mother testified how she would keep Father involved if she was awarded primary custody and she declared, "I put aside the personal attacks. I, you know, allow them to have a relationship and foster that relationship. I tell [the child] that she's going to have fun over the weekend." Mother also testified about calling for welfare checks while the child was with Father. She stated that in hindsight she should have tried to "work with Father," and that she has attempted to correct those issues by trying "to work on communication with [Father], and so I try not to let any personal attacks get to me, just so that I can make sure that him and [the child] can continue to, you know, foster a relationship and that I can keep the dislike between us out of it." The record shows that each parent requested a "standby," or "police assist" and welfare checks of the child. Based upon our review of the record, the district court did not abuse its discretion when it weighed the evidence before it and concluded that "[t]he level of cooperation and willingness to consult about a child's best interest, and compromise to that end, is altogether missing here." Contrary to Father's assertion the district court's decision to award primary custody to Mother is not a "punishment" against him. Rather, the decision was made with the child's best interests in mind.

[¶ 16] Father also contends that the district court abused its discretion when it disregarded the testimony of Father's two experts, Dr. William Bernet and Dr. Kevin Richards. Dr. Bernet testified at length regarding parental alienation and Dr. Richards testified regarding sex offender recidivism. The district court remarked on both experts' testimony in its decision letter, stating that the testimony was "not on point." The district court added,

[The expert testimony] ignored the father's motivations and conduct and the expert opinions presented had nothing to do with this child. They may have been correct about how alienation manifests itself usually, but the opinions given did not fit these facts. . . . They represent the father's be-

lief, still held at the time of trial that the mother and others were out to harm *him*. This Court's responsibility is not to him, but to his daughter. [Underline in original.]

[¶ 17] We have often said that the credibility of witnesses is for determination by the trial court. *Walter v. Walter*, 2015 WY 53, 346 P.3d 961 (Wyo.2015). After our review of both of the experts' testimony in their entirety, we conclude that the district court did not abuse its discretion by giving less weight to the experts than Father would have liked.

[¶ 18] We are likewise not persuaded by Father's argument that the district court abused its discretion by not considering two major points necessary to the determination of primary custody—international travel and the child's relation to her step-brother. Contrary to Father's assertion, testimony was heard on both of these issues from both Mother and Father. The district court commented directly on both of these points. Regarding the issue of traveling outside of the country, the district court stated:

> The mother's concern about father leaving the country with the minor is well taken as India is not a signatory to the Hague Convention and thus no treaty protection for parental abduction exists. However, it is contrary to the child's interest to enter orders now that would, for the remainder of her minority, deprive her of her extended family and the richness of that culture. In addition, it is an uncalled for insult to the father to assume in this order he would commit such an offense. Given that father is a licensed physician, has a son as well as a daughter here, and other protections can be instituted, there will be no absolute prohibition on travel outside the country. Instead, either parent must give written consent before the minor is taken out of the U.S. That can be accomplished in a number of ways, including a limitation on the passport obtained so that the mother and father must approve travel in writing. Neither party will obtain a passport without the others [sic] approval. Thus the parties must cooperate in signing whatever agreement for re-

turn, etc., is required to allow the travel, but may not refuse to allow it.

The district court could not have been clearer about its consideration of this issue and did not abuse its discretion in any manner.

[¶ 19] Likewise, regarding whether or not the court considered the child's relationship with her step-brother, the district court heard testimony from Mother that "allowing them ... time together is important." Mother testified that she would like her daughter and the step-brother to have the same summer arrangement so that "they can be together." The step-brother was clearly part of the district court's consideration in that the visitation order asks the parties to provide each other forty-five days notice of exercising visitation during the summer to "allow for travel or planned vacations with the parties' current families, the father's son, etc." Again, there was no abuse of discretion by the district court.

[¶ 20] Finally, Father also argues that the district court failed to understand or address that the GAL actually recommend that Father be awarded primary custody with a gradual implementation. Father insists that the GAL recommendations should be given significant weight here because the GAL was heavily involved in the case. Mother responds that the district court did understand the GAL's recommendation—the district court just happened to reject the recommendation because of the parties' inability to cooperate.

[¶ 21] We have previously described the role of a GAL as follows:

> A guardian ad litem, counsel, and the court should work together at the beginning of a case to develop and articulate clearly the scope and nature of the guardian ad litem's responsibilities. Full investigations of the facts relevant to custody should be completed by the guardian ad litem, including interviewing witnesses deemed appropriate by the guardian ad litem, custody evaluators, if any, counselors, teachers, relatives, and friends. Based on the evidence, input from any experts, and their own best judgment, the guardians ad litem will develop their recommendations concerning custody. They should communicate with

the parents' counsel, preferably in writing, regarding the proposed recommendations sufficiently in advance of trial to allow them to prepare evidence in response to the recommendations. If the parties agree, those recommendations should be provided to the court prior to trial. To fulfill their obligations to the children they represent, guardians ad litem must take the necessary steps to assure sufficient evidence is presented at trial either by introducing the evidence themselves or assuring counsel for one or both parents are prepared to do so. Finally, guardians ad litem should present their recommendations to the court in the form of closing argument and not through personal testimony. We recognize fully that often guardians ad litem are not handsomely compensated for their work. However, performing these outlined duties is required to fulfill their professional responsibility.

*Pace v. Pace*, 2001 WY 43, ¶ 26, 22 P.3d 861 at 870 (Wyo.2001). A court is not required to accept the recommendations of a guardian ad litem. *Olsen v. Olsen*, 2013 WY 115, ¶ 22, 310 P.3d 888, 894 (Wyo.2013). "[O]ur rule is that the credibility of witnesses, the weight of the evidence, and conflicts in the evidence must be resolved by the finder of fact[.]" *Montee v. State*, 2013 WY 74, ¶ 23, 303 P.3d 362, 367 (Wyo.2013).

[¶ 22] In our review of the record, however, the district court clearly explains why it rejected the GAL's recommendation—because of the parties' ultimate lack of cooperation. While the GAL served a critical role in this case, and was clearly instrumental in the case moving forward, the district court did not abuse its discretion when it rejected the GAL's recommendation.

*Due Process*

[¶ 23] Father argues that he was denied due process when the district court awarded Mother primary custody. As we have already discussed herein, the district court did not omit material factors in its determination of custody and did not abuse its discretion in awarding primary custody to Mother. Therefore, we cannot find that Father's due process rights were violated in any manner.

**CONCLUSION**

[¶ 24] We find no abuse of discretion or other reversible error in the district court's decision to award primary custody to Mother. Affirmed.