# IN THE SUPREME COURT, STATE OF WYOMING

## 2016 WY 37

### OCTOBER TERM, A.D. 2015

### March 14, 2016

IN THE MATTER OF THE
GUARDIANSHIP OF: JR, Minor Child.

TINA ESHLEMAN,

Appellant
(Petitioner),

v.                                                              S-15-0219

RANDY ROSENBERG and JENNIFER
ROSENBERG,

Appellees
(Respondents).

*Appeal from the District Court of Laramie County*
*The Honorable Steven K. Sharpe, Judge*

*Representing Appellant:*
    Carrol S. Nelson of Priority Legal, LLC, Cheyenne, Wyoming.

*Representing Appellees:*
    *Pro se.*

*Guardian Ad Litem:*
    No appearance.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Justice.**

[¶1]   Tina Eshleman,[1] the maternal aunt of JR, filed petitions for temporary and permanent guardianship of the child.  After a hearing on her petition for permanent guardianship, the district court concluded that she had not established that Mother and Father were unfit parents and denied her petition.  Ms. Eshleman appeals and we affirm.

## ISSUE

[¶2]   Did the district court correctly find that Ms. Eshleman did not establish that Mother and Father were unfit?

## FACTS

[¶3]   JR was born on April 2, 2013, to Jennifer and Randy Rosenberg (Mother and Father).  On March 27, 2014, Mother left JR in the care of Ms. Eshleman, Mother's sister and the Appellant here.  Ms. Eshleman filed a petition for emergency guardianship on April 25, 2014, and a petition for permanent guardianship on April 29, 2014, and was appointed temporary guardian.  A full evidentiary hearing on the petition for permanent guardianship was held on May 20, 2015.

[¶4]   At that hearing, Ms. Eshleman presented very little evidence as to Father.  She presented evidence regarding Mother's past behavior, but presented little evidence as to her current fitness as a parent.  Ms. Eshleman testified that Mother had struggled to raise her children, that she does not live with any of her other three children, that she used methamphetamine in the past, that she has a long history of drug use, and that she served time in prison in the past year.  Ms. Eshleman testified that she had concerns with JR's care while she was with Mother: JR did not receive proper nutrition, she was not clean when she was given to Ms. Eshleman by Mother in March of 2014, and Ms. Eshleman questioned whether she had been molested.  She also testified that neither Mother nor Father attempted to contact or financially support JR while she was in Ms. Eshleman's care from March of 2014 through May of 2015.  Ms. Eshleman also offered evidence that JR received excellent care while living with her and that JR had been thriving.

[¶5]   Mother and Father, who appeared *pro se*, testified that they currently reside in Spokane, Washington.  Mother testified that she was pregnant with her fifth child at the time of the hearing and was a stay-at-home mom.  She testified that Father was a cook at a local restaurant, and that he made a sufficient amount of money to pay their bills and allow Mother to stay home.  She admitted to using methamphetamine in the past and to serving 242 days in jail for attempted robbery.  She also testified that she had made

---

[1] Throughout the record Ms. Eshleman's name was spelled "Eshleman," "Eschelman," and "Eschleman." We will use "Eshleman" as that spelling appears on the caption.

mistakes in the past, but that her life was now on track, and she was presently clean and not using drugs. Father testified that while he did not have custody of his other minor children, he remained involved in their lives and had been working to make up arrears in child support payments. He also testified that he previously used both methamphetamine and marijuana, but that he had stopped using drugs and did not drink.

[¶6]   After the hearing on the matter, the district court ruled that Ms. Eshleman failed to establish by a preponderance of the evidence that Mother and Father are unfit as parents. Ms. Eshleman timely appealed.

## STANDARD OF REVIEW

[¶7]   Our standard of review in guardianship cases is well established.

> We presume the district court's findings of fact are correct and will not set them aside unless they are inconsistent with the evidence, clearly erroneous or contrary to the great weight of the evidence. *KO v. LDH* (*In re MEO*), 2006 WY 87, ¶ 17, 138 P.3d 1145, 1150 (Wyo. 2006). We review a district court's conclusions of law *de novo. Id.* Construction of the guardianship statutes involves a question of law which we also review *de novo. Id.*

*DJM v. DM (In re SRB-M)*, 2009 WY 22, ¶ 8, 201 P.3d 1115, 1117 (Wyo. 2009). Whether the district court applied the correct burden of proof is also a question of law which we review *de novo*. *Wise v. Ludlow*, 2015 WY 43, ¶ 19, 346 P.3d 1, 7 (Wyo. 2015).

## DISCUSSION

[¶8]   The district court concluded that Ms. Eshleman "has not showed that either [Mother or Father] are presently unfit. Without being provided evidence necessary to make that critical finding, this Court cannot legally grant the petition for permanent guardianship." Ms. Eshleman contends that she proved by a preponderance of the evidence that Mother and Father are unfit and she complains that, because Mother and Father appeared *pro se*, the district court held her to a higher standard.[2]

---

[2] We note that while Ms. Eshleman's attorney cited several cases regarding the standard of review, she cited to no legal authority and made minimal reference to the record or other authority in the argument portion of her brief. When a brief fails to present a "valid contention supported by cogent or pertinent authority, we consistently have refused to consider such cases[.]" *Berg v. Torrington Livestock Cattle Co.*, 2012 WY 42, ¶ 14, 272 P.3d 963, 966 (Wyo. 2012) (citation omitted). We have stated that when a party violates W.R.A.P. 7.01, this Court may take such action as it "deems appropriate, including but not limited to: refusal to consider the offending party's contentions; assessment of costs; dismissal; and

2

[¶9]    The guardianship statutes provide:

**Appointment of guardian.**

(a) The court may appoint a guardian if the allegations of the petition as to the status of the proposed ward and the necessity for the appointment of a guardian are proved by a preponderance of the evidence.

Wyo. Stat. Ann. § 3-2-104(a) (LexisNexis 2015).

[¶10]  In *In re Guardianship of MEO*, 2006 WY 87, ¶¶ 43-56, 138 P.3d 1145, 1157-61 (Wyo. 2006), we considered the question of what circumstances constitute a "necessity for the appointment of a guardian" of a minor in the context of an involuntary guardianship proceeding.  Underscoring constitutional principles, we stated:

The constitutional protections afforded to parents are not reserved for those who are perfect.  "The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents. . . ." *Santosky* [*v. Kramer*], 455 U.S. [745,] 753-54, 102 S.Ct. [1388,] 1394-95[, 71 L.Ed.2d 599 (1982)].  "Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life." *Id.*  "[S]o long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason . . . to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." *Troxel v. Granville*, 530 U.S. 57, 68-69, 120 S.Ct. 2054, 2061, 147 L.Ed.2d 49 (2000).

The district court's determination that a guardianship was warranted was based solely upon an analysis of MEO's best interests.  However, courts have denounced use of the

---

affirmance." *MTM v. State (In re KD)*, 2001 WY 61, ¶ 7, 26 P.3d 1035, 1036 (Wyo. 2001) (citing W.R.A.P. 1.03).  In spite of her non-compliance with W.R.A.P. 7.01, because we can discern the issues raised by Ms. Eshleman, we will address them.  *See Three Way, Inc. v. Burton Enters.*, 2008 WY 18, ¶ 15, 177 P.3d 219, 224 (Wyo. 2008) (declining to summarily affirm appeal despite failure of appellant to cite record because court was "readily able to discern the relevant facts").

3

best interests standard as the sole justification for altering a family unit, finding it at odds with a parent's rights.

> We have little doubt that the Due Process Clause would be offended "[if] a State were to attempt to force the breakup of a natural family, over the objections of the parents and their children, without some showing of unfitness and for the sole reason that to do so was thought to be in the children's best interest."
>
> *Quilloin v. Walcott*, 434 U.S. 246, 255, 98 S.Ct. 549, 554, 54 L.Ed.2d 511 (1978) (quoting *Smith v. Organization of Foster Families*, 431 U.S. 816, 862-863, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977) (Stewart, J., concurring in judgment)).

*Id*. at ¶¶ 50-51, 138 P.3d at 1159-60.

[¶11]   We held that "[a] child with a parent has a natural guardian and is not in need of a court-appointed guardian, unless the court determines that the child's natural guardian is not fit.  Thus, once the natural parent is deemed fit, the issue of custody is decided." *Id*. at ¶ 55, 138 P.3d at 1161 (internal quotation marks and citation omitted).  We went on to explain that "the district court did not find that Mother was an unfit parent.  At that point, Grandparents' petition should have been denied.  In the absence of a finding of parental unfitness, the district court's finding that a guardianship was necessary for MEO was clearly erroneous." *Id*. at ¶ 56, 138 P.3d at 1161.

[¶12]   In *In re SRB-M,* the maternal grandmother of SRB-M filed a petition for emergency temporary and permanent guardianship of SRB-M because the child had been in the grandmother's care from early on, Mother was incarcerated in Colorado and could not care for the child, and both Mother and Father consented to the appointment.  2009 WY 22, ¶¶ 3-4, 201 P.3d at 1116.  When Mother was released from prison, she filed a motion to terminate the guardianship, alleging that she could care for her child and was never adjudicated to be unfit.  *Id*. at ¶ 5, 201 P.3d at 1117.  The district court concluded that it was in the best interests of the child to continue the guardianship, but set forth a visitation schedule intended to gradually increase parental responsibility, while protecting the child's need for stability at the same time.  *Id*. at ¶ 7, 201 P.3d at 1117.  On appeal, we reversed, holding that because the district court did not find Mother to be unfit, the child could not be placed with the grandmother over Mother's objection.  *Id*. at ¶ 19, 201 P.3d at 1119-20.

[¶13]   In short, in order to determine whether a guardian should be appointed, the court must first determine whether the parents are unfit.  If a determination of unfitness is

4

made, then the court must look to the best interests of the child to determine an appropriate guardian. *In re Guardianship of MEO*, 2006 WY 87, ¶ 56, 138 P.3d at 1161; *In re SRB-M*, 2009 WY 22, ¶ 23, 201 P.3d at 1121. The district correctly applied this analysis. The district court examined the question of whether Ms. Eshleman had proven Mother and Father unfit by a preponderance of the evidence and concluded she had not.

[¶14] The district court explained:

> What is most troubling to the Court is the testimony that the Court did not hear. The Court did not hear any testimony to refute the Rosenberg[s'] claim[s] that they are clean and not presently using drugs. The Court heard no evidence at all as to any current drug usage by either parent.
>
> The Court did not hear nor see any documentation pertaining to Mrs. Rosenberg's criminal conviction and her jail sentence and whether or not she is still under any kind of court supervision.
>
> The Court did not hear or see any court documentation establishing that Mrs. Rosenberg did not have custody or any right to visitation with any of her other children. The Court did not hear any testimony at all as to the alleged unfitness of Mr. Rosenberg. Mr. Rosenberg is the father of this child, and his fitness must also be established. There was a surprising lack of evidence presented by the Petitioner as to Mr. Rosenberg.
>
> The Court also did not hear any testimony to support some of the essential allegations that are contained in the petition. For example, there was a complete dearth of evidence to suggest that JR has been molested, which appeared to be a critical allegation in the original petition. No evidence at all was presented to substantiate that allegation.
>
> . . . .
>
> In short, the Court finds that the Petitioner has failed to meet her burden of proof.

[¶15] Ms. Eshleman offers no basis for her contention that the district court held her to a higher standard than required by law. The law required her to establish, by a preponderance of the evidence, that both parents were unfit at the time of trial. *See In re*

*SRB-M*, 2009 WY 22, ¶ 23, 201 P.3d at 1121. Our review of the record reveals that the district court was correct in concluding that no evidence was introduced at the hearing regarding the ***present*** fitness of Mother or Father. The evidence concerning Mother was a year old, and there was very little evidence concerning Father at all. Given the lack of evidence on the current unfitness of either parent, the district court's determination was not inconsistent with the evidence, clearly erroneous, or contrary to the great weight of the evidence. The district court's legal standard was correct as a matter of law.

[¶16] Ms. Eshleman also contends that it was error for the district court to disregard the testimony and recommendations of the *guardian ad litem*. The *guardian ad litem* argued, "So my position is that we've heard enough to know that they are not fit parents at this time. They are not going to be fit parents without help." She went on to urge the court to grant the permanent guardianship to Ms. Eshleman and allow the parents to "get to know" their child, and "once they get their act together" they could seek termination of the guardianship.

[¶17] "A court is not required to accept the recommendations of a *guardian ad litem*. As this Court has often said, our rule is that the credibility of witnesses, the weight of the evidence, and conflicts in the evidence must be resolved by the finder of fact." *Olsen v. Olsen*, 2013 WY 115, ¶ 22, 310 P.3d 888, 894 (Wyo. 2013) (internal quotation marks and citations omitted); *see also FFJ v. ST*, 2015 WY 69, ¶ 21, 348 P.3d 415, 421-22 (Wyo. 2015) (district court was not required to follow recommendation of *guardian ad litem*). In this instance, based on the evidence before it, the district court disagreed with the conclusion urged by the *guardian ad litem*. The district court found that Ms. Eshleman had not met her burden of showing unfitness. For the reasons discussed above, we affirm that decision. Just because the *guardian ad litem* argued that unfitness had been established does not make it so. The district court did not abuse its discretion in reaching a different conclusion than the *guardian ad litem* as to whether Mother and Father were unfit.

## *CONCLUSION*

[¶18] At the hearing on this matter, Ms. Eshleman provided no evidence regarding the present fitness of Mother and Father as parents of JR. The district court applied the correct burden of proof when it evaluated whether Ms. Eshleman had proven that Mother and Father were unfit. The district court's finding that Ms. Eshleman did not establish by a preponderance of the evidence that Mother and Father were unfit was not inconsistent with the evidence, clearly erroneous, or contrary to the great weight of the evidence. Affirmed.