# IN THE SUPREME COURT, STATE OF WYOMING

## 2021 WY 122

OCTOBER TERM, A.D. 2021

November 2, 2021

IN THE MATTER OF THE
GUARDIANSHIP OF: DEP, minor child,

KEVIN J. and DARCY R. GUILLE,

Appellants
(Petitioners),

v.

DIONA R. PALU,                                                   S-21-0096

Appellee
(Petitioner),

and

BRANDON and DIANE MCARTHUR,

Appellees
(Respondents).

*Appeal from the District Court of Laramie County*
*The Honorable Steven K. Sharpe, Judge*

*Representing Appellant:*
     Levi C. Kelly of Wadas Law Office, P.C., Cheyenne, Wyoming.

*Representing Appellee:*
     No appearance.

*Before FOX, C.J., and DAVIS, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*



**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BOOMGAARDEN, Justice.**

[¶1]     Kevin and Darcy Guille (the Guilles) appeal the district court's order terminating their co-guardianship of DEP, Diona Palu's (Mother's) child.  They contend the court deprived them of due process by not providing them notice that it intended to address Mother's motion to terminate the guardianship at a scheduled hearing on their emergency motion for the child's return.  They also contend the court's parental fitness finding is contrary to the great weight of the evidence.[1]  We affirm because the Guilles failed to provide a record adequate to review these issues.

## *ISSUES*

[¶2]     Given the posture of this appeal, we restate the dispositive issues as:

> I. Is the record on appeal adequate to review the Guilles' due process claim?
>
> II. Is the record on appeal adequate to review the district court's parental fitness finding?

## *FACTS*

[¶3]     The limited record on appeal reveals the following facts.  The Guilles petitioned the district court to appoint them co-guardians of DEP.  Mother joined their petition and the child's father consented to the appointment.

[¶4]     In June 2020, the court granted the petition.  It found that the Guilles were fit and proper persons to act as guardians and appointed them co-guardians "with full authority to act on behalf of [DEP]."  The duration of the appointment would be permanent, except on occurrence of any circumstance listed in Wyo. Stat. Ann. § 3-3-1101.  The court made no finding on parental fitness, as the petition contained no allegation that Mother was unfit to parent DEP.

[¶5]     Approximately six months later, in December 2020, the Guilles allowed Mother and the McArthurs to take the child Christmas shopping.  Instead of returning the child to the Guilles after the visit, Mother and the McArthurs returned to their home in South Dakota with the child.  Then they sent the Guilles a letter explaining their decision.  The letter made clear they had no intention to return the child.

---

[1] Neither Mother nor the child's maternal grandparents, Brandon and Diane McArthur (the McArthurs), filed a brief on appeal.

[¶6] The Guilles immediately filed an *Emergency Ex Parte Motion for Return of Child Removed from the State*. Their motion outlined the circumstances surrounding the child's removal from the state and expressed concern about the child because, according to the Guilles, Mother had previously neglected her parental duties. The Guilles requested a 15-minute hearing on their motion.

[¶7] In her response to the emergency motion, Mother painted a different picture of the circumstances surrounding the guardianship and opposed returning the child on grounds that the guardianship was no longer necessary. Mother stated that she and the child were currently living with the McArthurs in South Dakota and doing well. Mother separately moved to terminate the guardianship because she no longer trusted the Guilles.

[¶8] In February 2021, the court issued a notice and order setting hearing for March 8. The document's title was partially crossed out so that it stated: "**NOTICE AND ORDER SETTING ~~EX PARTE EMERGENCY~~ HEARING**[.]" Although the court crossed out the words "ex parte emergency" in the title, the remainder of the document stated that the matter was "set for hearing on the *Emergency Motion for Return of Child*." The parties had to appear by phone or video. If counsel wanted a court reporter they needed to arrange for one. Fifteen minutes were set aside for the hearing.

[¶9] Shortly after the court issued that notice and order, the Guilles responded to Mother's motion to terminate the guardianship with two alternative requests. First, they requested the court deny the motion because the guardianship was necessary and in the child's best interest. In support of that request, they stated that they were originally the child's day care providers. The guardianship had to be established because, for several months, Mother had been unavailable to parent the child, using drugs, experiencing mental health problems, acting irresponsibly, and unemployed. The Guilles further stated that Mother had little contact with the child since the court established the guardianship. In the alternative, the Guilles requested the court appoint a guardian ad litem to report on necessity and the child's best interest.

[¶10] The court held a hearing in March, as scheduled, where it heard both the Guilles' emergency motion and Mother's motion to terminate the guardianship. The Guilles, Mother, and the McArthurs appeared by video. The Guilles were represented by counsel and Mother appeared pro se. No party requested the hearing be reported.

[¶11] Following the hearing, the court issued an order denying the Guilles' motion and granting Mother's. At the outset, the court noted that the guardianship was voluntary; the petition contained no allegation that Mother was unfit—it stated that she needed help making "timely decisions"; and the Guilles alleged for the first time that Mother was unfit to care for her child in their emergency motion.

2

[¶12]   The court then summarized some of the evidence presented at the hearing.  It noted that Mother was living with the McArthurs, employed, attending counseling with a therapist, and working on trauma-related issues.  The McArthurs continued to provide Mother help and support, including a safe and appropriate place to live.  The McArthurs stated that, while their relationship with Mother had not always been perfect, they would file for a guardianship in South Dakota if they believed one was necessary.

[¶13]   In its analysis, the court explained that although it did not approve of the McArthurs' decision to abduct the child, it found them to be supportive and appropriate grandparents and caregivers.  Mother and the child were in a safe and appropriate place with them.  The court did not find from the facts presented that Mother was presently unfit to care for her child, as she had a safe and stable place to live with the child, was employed, and was in counseling to help with mental health related issues.  It thus terminated the guardianship and the Guilles timely appealed.

## *DISCUSSION*

### I.    *The record on appeal is inadequate to review the Guilles' due process claim.*

[¶14]   Whether the Guilles were afforded due process is a question of law we review de novo.  *Rush v. Golkowski*, 2021 WY 27, ¶ 33, 480 P.3d 1174, 1182 (Wyo. 2021) (citation omitted).  As the party claiming an infringement on their right to due process, the Guilles must demonstrate both that they have a protected interest and that such interest has been affected in an impermissible way.  *Id.* (citation omitted).  "The question is whether there has been a denial of fundamental fairness."  *Id.* (citation omitted).

[¶15]   "Notice and the opportunity to be heard are touchstones of due process."  *Lemus v. Martinez*, 2019 WY 52, ¶ 34, 441 P.3d 831, 839 (Wyo. 2019) (citation omitted).  "The opportunity for hearing must be appropriate to the nature of the case, and must be at a meaningful time and in a meaningful manner."  *Id.* (citation & internal quotations omitted).

[¶16]   The Guilles argue they have a protected interest as guardians and were, thus, entitled to notice and an opportunity to be heard before the district court terminated their guardianship.  From there, they argue the court did not provide them notice that it intended to address Mother's motion to terminate the guardianship at the March hearing.  Accordingly, they "could not prepare to present evidence or cross-examine witnesses."

[¶17]   There is no question the court should have more clearly identified, in its notice and order setting hearing, the issues it intended to address at the March hearing.  However, even if the Guilles had a protected interest, were entitled to notice and an opportunity to be heard, and did not receive adequate notice—issues we do not resolve here—we have no way to assess whether their protected interest was infringed upon in an impermissible way because the record does not contain a transcript of the March hearing or a court approved

substitute for a transcript. *See Woodward v. Valvoda*, 2021 WY 5, ¶ 34 n.5, 478 P.3d 1189, 1201 n.5 (Wyo. 2021) ("It is the appellant's responsibility to provide us with an adequate record." (citation omitted)). We understand why the Guilles may not have arranged for a court reporter for a 15 minute hearing on an emergency motion, but they could have provided us a court approved statement of the proceeding and evidence pursuant to W.R.A.P. 3.03.[2]

[¶18] Because there is no transcript or statement of the evidence, we do not know whether the Guilles requested a continuance when they learned that the court intended to address Mother's motion to terminate the guardianship. *See ELA v. AAB*, 2016 WY 98, ¶ 24, 382 P.3d 45, 50–51 (Wyo. 2016) (noting that nothing in the record indicated appellant asked for a continuance); *Booth v. Booth*, 2019 WY 5, ¶ 17, 432 P.3d 902, 908 (Wyo. 2019) (noting that appellant never requested a continuance). Had the Guilles requested a continuance, and the court denied their request, we would have reviewed the denial for an abuse of discretion. *See, e.g.*, *Bacus v. Coon*, 2020 WY 2, ¶ 7, 454 P.3d 945, 947 (Wyo. 2020) ("To find an abuse of discretion, the refusal [to grant a continuance] must be so arbitrary as to deny appellant due process, and the burden rests upon appellant to prove actual prejudice and a violation of his rights." (citation omitted)).

[¶19] Relatedly, we do not know whether the Guilles raised their due process claim in the district court. *See Rush*, ¶ 35, 480 P.3d at 1182. "We normally do not consider issues not raised or argued in the district court, except for those issues which are jurisdictional or are fundamental in nature." *Id.* (citing *Smith v. Kelly*, 2019 WY 60, ¶ 22 n.5, 442 P.3d 297, 302 n.5 (Wyo. 2019)). "Simply asserting that there is a constitutional violation does not make an issue fundamental in nature." *Id.* (citing *Crofts v. State ex rel. Dep't of Game & Fish*, 2016 WY 4, ¶ 24, 367 P.3d 619, 625 (Wyo. 2016); *Womack v. Swan*, 2018 WY 27, ¶ 11 n.2, 413 P.3d 127, 133 n.2 (Wyo. 2018)).

---

[2] This rule provides:

> If no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable, appellant may prepare a statement of the evidence or proceedings from the best available means including appellant's recollection. The statement shall be filed in the trial court and served on appellee within 35 days of the filing of the notice of appeal. Appellee may file and serve objections or propose amendments within 15 days after service. The trial court shall, within 10 days, enter its order settling and approving the statement of evidence, which shall be included by the clerk of the trial court in the record on appeal. If the trial court is unable to settle the record within 10 days, the judge shall notify the appellate court clerk, trial court clerk, and the parties of the delay and anticipated date of completion.

W.R.A.P. 3.03 (LexisNexis 2021).

[¶20] Moreover, while the Guilles may not have been prepared to make an offer of proof in the district court, they only vaguely assert, on appeal, that they could not prepare to present evidence or cross-examine witnesses because the court did not provide them adequate notice. They do not identify what evidence they might have presented at the hearing if they had received adequate notice, identify any evidence that additional cross-examination might have elicited, or explain how such evidence might have impacted the court's decision to terminate their guardianship. *See Davidson v. Carrillo*, 2014 WY 65, ¶ 16, 325 P.3d 444, 450 (Wyo. 2014) (noting that, on appeal, father failed to identify any evidence that additional cross-examination might have elicited, or the evidence that he might have presented in rebuttal). For these reasons, we are unable to and will not address the Guilles' due process claim.

## II. *The record on appeal is inadequate to review the district court's parental fitness finding.*

[¶21] "Guardianship matters are controlled and governed exclusively by statute." *Matter of Guardianship of ARB*, 2021 WY 102, ¶ 8, 495 P.3d 297, 299 (Wyo. 2021) (quoting *KO v. LDH (In re MEO)*, 2006 WY 87, ¶ 18, 138 P.3d 1145, 1150 (Wyo. 2006)). The governing statute in this case states that "[a] guardianship shall cease . . . [u]pon determination by the court that the . . . guardianship is no longer necessary[.]" Wyo. Stat. Ann. § 3-3-1101(a)(v) (LexisNexis 2021). We recently addressed the burden of proof under this statute.

[¶22] "If a parent who was never adjudicated to be unfit establishes that the guardianship is no longer necessary, the parental preference principle applies and the parent is presumed to be the child's guardian." *ARB*, ¶ 9, 495 P.3d at 299 (citing *DJM v. DM (In re SRB-M)*, 2009 WY 22, ¶¶ 23, 24, 201 P.3d 1115, 1121 (Wyo. 2009)). "The burden then shifts to the nonparent to rebut the presumption by proving, by a preponderance of the evidence, that the parent is unfit." *Id.* (citing *SRB-M*, ¶¶ 23, 24, 201 P.3d at 1121). "This allocation of the burden of proof is consistent with the policy underlying the establishment of guardianships and the constitutional protections afforded a child's biological parent." *Id.* (quoting *SRB-M*, ¶ 24, 201 P.3d at 1121); *see also MEO*, ¶ 21, 138 P.3d at 1152 (discussing these constitutional protections); Wyo. Stat. Ann. § 3-3-1107(a) (LexisNexis 2021) ("Upon the filing of a petition for termination of guardianship by a parent, the court shall consider the best interests of the child while giving deference to the rebuttable presumption that a fit parent is entitled to custody of their child.").

[¶23] The district court implicitly found that Mother established the guardianship was no longer necessary for the reason it had been established. It noted the guardianship was voluntary and the petition contained no allegation that Mother was unfit—it stated she needed help making "timely decisions." Then it noted that the evidence established "Mother was living with the McArthurs[,]" employed, "attending counseling with a therapist[,] and working on trauma-related issues." The court also implicitly determined

5

that the Guilles failed to prove Mother was unfit, as she "ha[d] a safe and stable place to live with the child[,]" was employed, and was "engaged in counseling to help with mental health related issues."

[¶24]  The Guilles contend the district court's parental fitness finding is contrary to the great weight of the evidence.  More specifically, they argue Mother lacked fitness because she "was unwilling to be available for her child" and thus could not adequately provide for the child's ongoing needs.  They also contend Mother demonstrated she was unfit by disregarding the legal system and colluding to abduct and remove the child from the state.

[¶25]  The standard we apply to review factual findings in guardianship cases is well established.  "We presume the district court's findings of fact are correct and will not set them aside unless they are inconsistent with the evidence, clearly erroneous or contrary to the great weight of the evidence."  *ARB*, ¶ 7, 495 P.3d at 299 (quoting *SRB-M*, ¶ 8, 201 P.3d at 1117).

[¶26]  To assess whether the district court's parental fitness finding is contrary to the great weight of the evidence, we need a transcript or statement of evidence.  As noted above, the record contains neither.  Consequently, we cannot consider the court's finding in light of the evidence as a whole, and must instead presume the court's parental fitness finding is correct.  *See Woodward*, ¶ 34, 478 P.3d at 1201 ("When no transcript or any other proper substitute record of the facts of a case is included in the record on appeal, we presume that there were no irregularities in the district court's judgment." (citation omitted)); *Boyce v. Jarvis*, 2021 WY 80, ¶ 27, 490 P.3d 320, 326 (Wyo. 2021) ("In the absence of anything to refute them, we will sustain the trial court's findings, and we assume that the evidence presented was sufficient to support those findings." (citation omitted)).

[¶27]  Affirmed.