# IN THE SUPREME COURT, STATE OF WYOMING

## 2016 WY 24

### OCTOBER TERM, A.D. 2015

**February 24, 2016**

| | |
|---|---|
| IN THE INTEREST OF CRA, A Minor Child. | |
| DB, | |
| Appellant (Respondent), | |
| v. | S-15-0194 |
| THE STATE OF WYOMING, | |
| Appellee (Petitioner). | |
| IN THE INTEREST OF CRA, A Minor Child. | |
| DB, | |
| Appellant (Respondent), | |
| v. | S-15-0208 |
| THE STATE OF WYOMING, | |
| Appellee (Petitioner). | |

*Appeal from the District Court of Sweetwater County*
The Honorable Nena James, Judge

*Representing Appellant:*
   Douglas W. Bailey of Bailey, Stock, Harmon, Cottam, P.C., Cheyenne, Wyoming.

*Representing Appellee:*
Peter K. Michael, Wyoming Attorney General; Misha Westby, Deputy Attorney General; Jill E. Kucera, Senior Assistant Attorney General; Christina F. McCabe, Senior Assistant Attorney General.  Argument by Ms. McCabe.

*Representing Guardian Ad Litem:*
Dan S. Wilde, Deputy State Public Defender; Aaron S. Hockman, Chief Trial and Appellate Counsel, Wyoming Guardian ad Litem Program, a division of the Office of the State Public Defender.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice**

[¶1]   The juvenile court temporarily placed CRA, age five, with her maternal grandmother after the Sweetwater County Attorney filed allegations that EA, who is CRA's mother, neglected her.  All parties, including DB, who is CRA's father, agreed that CRA should remain in Department of Family Services (DFS) custody for placement with her grandmother under a consent decree which would last for up to one year.  The consent decree provided that if EA complied with certain requirements, the neglect action would be dismissed.  While the consent decree was pending, DB asserted that he should have custody of CRA because the juvenile court had not determined him to be unfit.  The juvenile court entered a permanency order continuing CRA in DFS custody, and DB appealed.  Shortly thereafter, the County Attorney moved to dismiss the case and terminate DFS custody of CRA, asserting that EA had completed her case plan and had complied with the consent decree.  The juvenile court dismissed the case without a hearing, and DB appealed that order as well.  We consolidated the appeals.

[¶2]   We determine that the juvenile court properly dismissed the case without a hearing, and that other issues raised by DB are moot.  Consequently, we affirm the juvenile court.

## ISSUES

[¶3]   DB lists six overlapping issues, which we re-state as follows:

1.      Did the juvenile court err when it granted the State's motion to dismiss without a hearing or findings about EA's completion of the consent decree requirements?

2.      Are the other issues raised by DB moot?  If so, does any exception to the mootness doctrine apply?

3.      When a child in an abuse/neglect case must be temporarily removed from his/her custodial parent, is the non-custodial parent constitutionally entitled to temporary custody unless the juvenile court determines he/she unfit?

## FACTS

[¶4]   Appellant, DB, is the father of CRA, who was born in 2008.  EA is CRA's mother.  In January of 2010, the district court in Sweetwater County issued a judgment and order establishing CRA's paternity and placing CRA in the primary physical custody of EA.  EA and CRA lived in Sweetwater County and DB lived in Laramie County.

[¶5]   On Sunday, May 18, 2014, Rock Springs police arrested and incarcerated EA.  They placed five-year-old CRA in protective custody with DFS.  DFS then temporarily

1

placed CRA with her maternal grandmother. Four days later the State filed a petition alleging CRA was a neglected child under Wyo. Stat. Ann. § 14-3-202(a)(vii) (LexisNexis 2015). The Petition stated that the minor's father "is unknown to the state," although DFS had filed the earlier paternity suit asserting DB was CRA's father. Nothing in the Petition mentioned shelter care for CRA under Wyo. Stat. Ann. § 14-3-409 (LexisNexis 2015). The State attached a DFS temporary case plan for CRA to the Petition. The temporary case plan entirely omitted DB.

[¶6] The juvenile court issued an order setting an initial hearing for the same day the petition was filed. The order did not mention shelter care, and there is no indication that it was served on either parent. On June 10, 2014, the juvenile court signed an order for temporary custody, placing CRA into "the legal custody of the Wyoming Department of Family Services for placement in relative foster care, at or near Green River . . .." The order said it was the result of a hearing conducted on May 22, 2014, in which DB participated by telephone. The order provided that DB could have supervised visitation with CRA.

[¶7] Both DB and EA participated in a multidisciplinary team meeting on July 22, 2014. In that meeting, DB agreed that CRA should remain with her maternal grandmother. On August 8, 2014, DFS filed a "Predisposition Report" with the juvenile court. The report indicated that DB had not visited CRA at all in the two and one-half months since the case began. It stated that the "permanency goal (for CRA) is reunification with (EA) and the concurrent plan is more than likely adoption." As with the temporary case plan, the predisposition report never mentioned any consideration that CRA could be placed in her father's custody.

[¶8] On August 18, 2014, Robert Spence entered an appearance as DB's attorney in the case. Subsequently, he approved a consent decree on behalf of DB. The essential terms of the consent decree, for our purposes, were:

> 1. The County Attorney, Guardian ad Litem for CRA, EA, and DB all stipulated to the consent decree as required by Wyo. Stat. Ann. § 14-3-428(a) (LexisNexis 2015).

> 2. The consent decree placed probationary requirements on EA[1] for one year.[2] Those requirements all related the goal of reuniting CRA with EA.

---

[1] Section 14-3-428(b) requires that a consent decree include "the case plan for the family." This consent decree did not address DB's role in CRA's life or as part of her family in any manner.

[2] When a child is placed outside the home, as here, § 14-3-428(d) provides a maximum length of six months. For good cause, the juvenile court may grant one extension for an additional six months.

3.	CRA would remain in the custody of DFS "for placement until further order of the court."

4.	If EA failed to fulfill the conditions of the consent decree, "the original petition and proceedings may be reinstated at the County Attorney's discretion." If she completed the probation, the case would be dismissed.[3]

The parties submitted the consent decree to the juvenile court, and the court approved it on August 26, 2014.

[¶9]	The multidisciplinary team met again on November 4, 2014. DB participated in the meeting and agreed with the team that CRA should remain with her maternal grandmother. After that meeting, Douglas Bailey replaced Mr. Spence as DB's attorney. Mr. Bailey filed a motion requesting additional visitation between DB and CRA. The juvenile court heard that motion and granted additional visitation to DB.

[¶10]	On February 3, 2015, the multidisciplinary team met for a third time. DB, for the first time, took the position that DFS custody was unnecessary, presumably arguing that he was fit to have custody. However, at the same meeting, DB and Mr. Bailey took the position that "if placement is still necessary, (CRA) remain with her grandmother." One week later DB filed a document titled "Brief in Opposition to Continued State Custody and Foster Care Placement." In that document he argued that, because he had not been found "unfit," the juvenile court "should terminate the current custody arrangement and relinquish custody to the child's father, (DB)." The juvenile court did not end CRA's temporary custody, but instead adjusted DB's visitation at the request of CRA's counselor.

[¶11]	The multidisciplinary team met again on May 5, 2015. The team, including DB, recommended that CRA continue to live with her grandmother and that trial home placement with EA was the next step in the case. The multidisciplinary team's report stated that EA's compliance with her case plan was "very good."

[¶12]	The juvenile court set a "permanency review hearing" for May 14, 2015. The record contains no indication that the order setting hearing was ever served on any of the parties or attorneys in the case. EA apparently did not appear at the hearing, so the juvenile court re-set it for June 17, 2015. DB again asked the juvenile court to terminate the case and place CRA with him because he was a fit parent. Instead, the juvenile court set an extended summer visit between CRA and DB, and ordered that CRA remain in

---

[3] Upon dismissal of the juvenile case, custody would be controlled by the 2010 paternity case.

3

DFS custody for an additional six months.[4]   Contrary to the multidisciplinary team's finding that EA's performance on her case plan was "very good," the juvenile court's order stated "case plan compliance has been poor."[5]

[¶13]  On July 24, 2015, the county attorney's office served all parties and attorneys with a motion to dismiss, asserting that EA had completed her probation and case plan.  On July 28, 2015, the juvenile court signed an order of dismissal without DB's consent and without a hearing.  DB appealed from both the permanency order and the dismissal.

[¶14]  While the juvenile case was pending, DB filed a motion in the original paternity case seeking a modification of custody.  At oral argument, DB's counsel represented that a trial on his motion to change custody in the paternity case had occurred, and that the parties were awaiting a decision from the district court.

## DISCUSSION

1. **Did the juvenile court err when it granted the State's motion to dismiss without a hearing or findings about EA's completion of the consent decree requirements?**

[¶15]  The State, through the Sweetwater County Attorney, filed a motion to dismiss the juvenile case and to vacate the temporary custody placed in DFS, asserting that "the case plan has been completed."  The juvenile court granted that motion without a hearing. Whether a hearing was necessary before the juvenile court could dismiss the case is determined by the Child Protection Act, Wyo. Stat. Ann. § 14-3-401 through 441 (LexisNexis 2015), and by the terms of the consent decree.  Questions of statutory interpretation and of contract construction are matters of law which this Court reviews *de novo*. *LM v. Laramie County Dep't of Family Servs. (In re MN),* 2007 WY 189, ¶ 4, 171 P.3d 1077, 1080 (Wyo. 2007); *MR v. State (In re CDR),* 2015 WY 79, ¶ 26, 351 P.3d 264, 270 (Wyo. 2015).

A. **Statutory requirements.**

_____

[4] This extension of placement under a consent decree is contrary to § 14-3-428(c).  The case had already been pending for more than one year, and the consent decree had been in force for nearly ten months.

[5]It is curious that the record includes multidisciplinary team reports and an order from this permanency hearing.  Wyo. Stat. Ann. § 14-3-427(h) (LexisNexis 2015) prohibits the juvenile court from considering multidisciplinary team reports before adjudication unless the parents consent.  There was no adjudication in this case and the record contains no consents.  Section 14-3-428 does not require permanency hearings in consent decree cases.  Permanency hearings are required in twelve month intervals, and consent decrees can never be extended beyond twelve months.

4

[¶16] When interpreting a statute and its application, we first look at the plain language used by the legislature. *MR,* ¶ 19, 351 P.3d at 269. If the statute is sufficiently clear and unambiguous, the Court simply applies the words according to their ordinary and obvious meaning. *Id.*

[¶17] Section 14-3-428 provides for consent decrees in juvenile neglect cases. This statute requires hearings in only two circumstances. First, the statute requires review hearings under § 14-3-431 while a child is in placement. Section 14-3-428(e). Second, a hearing is required to reinstate the original petition and proceeding if the parent or guardian fails to fulfill the terms of the consent decree. Section 14-3-428(f). This statute does not require any other hearings. It specifies that a consent decree cannot be entered without the agreement of the district (county) attorney, the child's guardian ad litem and the parents, but does not require a hearing to create a consent decree. Section 14-3-428(a). Once a consent decree is ordered, further proceedings in the juvenile neglect case are held in abeyance. *Id.* A consent decree can then end either by expiration of its term, or by discharge by the court. Section 14-3-428(f). Nothing in the plain language of this statute requires the court to conduct a hearing or make findings before a consent decree can expire by either of those means.

[¶18] We decline to interpret this statute as requiring a hearing prior to the juvenile court's discharge of EA because the plain language of the statute does not include such a requirement. Similarly, the statute does not require any court findings prior to discharge. "A basic tenet of statutory construction is that omission of words from a statute is considered to be an intentional act by the legislature, and the Court will not read words into a statute when the legislature has chosen not to include them." *Adelizzi v. Stratton*, 2010 WY 148, ¶ 11, 243 P.3d 563, 566 (Wyo. 2010). "When the legislature specifically uses a word in one place, we will not interpret that word into other places where it was not used." *Id.*; *In re Adoption of Voss*, 550 P.2d 481, 485 (Wyo. 1976).

[¶19] DB argues that the juvenile court was required to hold a hearing to determine whether EA had complied with the consent decree requirements. He then asserts that she had not complied, so "the original petition and proceeding should have been reinstated." In effect, DB argues that a hearing was necessary so the juvenile court (or DB himself) could decide to proceed with the original neglect accusations against EA. Such a hearing would have been meaningless because only the county attorney could decide whether to prosecute the neglect case. Even if the juvenile court found that EA had not complied with the consent decree, under Wyoming statutes it could not force the county attorney to pursue the neglect action.[6]

---

[6] Although the juvenile court cannot force the county attorney/district attorney to seek reinstatement of a neglect case after a consent decree is entered, it can, on its own motion, find a parent in contempt for failure to comply with the conditions ordered in a consent decree under § 14-3-438 (LexisNexis 2015).

5

[¶20] Under Wyoming's Child Protection Act the district attorney or county attorney has the sole discretion to determine whether to pursue a neglect action. Section 14-3-411. Only the district attorney or county attorney may file a petition alleging neglect. *Id*. Only the district attorney or county attorney is responsible for presenting evidence in support of a petition alleging neglect. Section 14-3-424(a). Under Wyoming's statutes, neither the juvenile court nor the other parent can prosecute a neglect action. Neither the juvenile court nor the other parent can force the district attorney or county attorney to prosecute a neglect action. Here, the county attorney decided that EA had complied with the consent decree satisfactorily, and determined not to pursue the neglect case. At that point there was nothing for the juvenile court to find or decide at a hearing.[7]

### B. Contract Principles

[¶21] DB correctly recognizes that a consent decree is a contractual agreement between the parties and is enforced as a contract. *MR*, ¶ 24, 351 P.3d at 269. As with any contract, a consent decree must be "construed as it is written." *Id.,* ¶ 24, 351 P.3d at 270. DB then argues that "the consent decree imposed many conditions on (EA), the violation of which could have caused the original petition and proceedings to be reinstated." He asserts that there should have been a hearing to determine EA's compliance before the juvenile court discharged EA.

[¶22] The consent decree which EA agreed to stated, "if, prior to expiration of this decree, (EA) fails to fulfill the terms and conditions of this decree, the original petition and proceedings may be reinstated **at the County Attorney's discretion . . . .**" (Emphasis added.) The plain language of the consent decree recognized that the county attorney had the discretion to decide if the original petition should be pursued. Nothing in the consent decree required a hearing in the event the county attorney decided not to pursue the original case. Nothing in the consent decree requires court findings before the consent decree is ended. DB does not and cannot point to any provision in the consent decree which requires a hearing to review the county attorney's exercise of his discretion.

[¶23] The Wyoming Child Protection Act and the consent decree in this case both recognize that the county attorney had sole discretion to decide whether to pursue neglect charges against EA. Neither the statutes nor the consent decree itself required a hearing or any court findings before the juvenile court discharged EA at the request of the county attorney. The juvenile court properly discharged EA from the consent decree in this case.

### 2. Are the other issues raised by appellant moot? If so, does any exception to the mootness doctrine apply?

---

[7] The role of the district or county attorney in a juvenile case is analogous to the role of a prosecutor in a criminal case. A statute giving the courts authority to require prosecution of a certain case is an unconstitutional violation of our principles of separation of powers. *Hilderbrand v. Padget*, 678 P.2d 870 (Wyo. 1984).

[¶24] Both the State and the guardian ad litem for CRA assert that this case is moot because the temporary custody in the juvenile case has ended, the juvenile case was dismissed, and DB has now presented his claim for custody of CRA to the district court. They argue that any decision this Court were to make on DB's claim that he should have been given temporary custody of CRA would have no effect. We agree.

[¶25] Under the doctrine of mootness, "a court should not hear a case where there has been a change in circumstances occurring either before or after a case has been filed that eliminates the controversy." *Operation Save America v. City of Jackson*, 2012 WY 51, ¶ 21, 275 P.3d 438, 448 (Wyo. 2012) (quoting *KO v. LDH ( In re Guardianship of MEO)*, 2006 WY 87, ¶ 27, 138 P.3d 1145, 1153 (Wyo. 2006)). "The central question in a mootness case is 'whether decision of a once living dispute continues to be justified by a sufficient prospect that the decision will have an impact on the parties.'" *Id.*, ¶ 27, 138 P.3d at 1153-54 (quoting *Southwestern Pub. Serv. Co. v. Thunder Basin Coal Co.*, 978 P.2d 1138, 1143 (Wyo. 1999)).

[¶26] We have consistently found issues moot when a change occurs while an appeal is pending that makes any decision we might make of no consequence. For example, in *Northern Arapahoe Tribe v. State (In re SNK)*, 2005 WY 30, 108 P.3d 836 (Wyo. 2005) a child was placed in foster care. Appellant challenged the foster care placement. After the appeal was filed, the parties signed a consent decree which returned the child to her mother and ended the foster placement. We determined that the issue was moot because any "opinion relating to the matter would have no impact on the parties." *Id.*, ¶ 5, 108 P.3d at 837. In *McLain v. Anderson*, 933 P.2d 468, 472 (Wyo. 1997) appellants challenged a ruling about protective covenants but then agreed to amend the covenants to match the ruling of the trial court. We found that the issue was moot because any decision "cannot have any practical effect on the existing controversy."

[¶27] Those same principles apply here. Any ruling we make about temporary custody during CRA's juvenile neglect case would have no impact on DB, EA, CRA, or the State. The juvenile neglect case is entirely over. There is no pending case in which the juvenile court could order temporary custody to DB. DB had the opportunity to present his position about permanent custody to the district court, and CRA's custody is determined by the ruling of that court, not the juvenile court. The issues DB raises about temporary custody during the pendency of a neglect case are simply moot.

[¶28] There are exceptions to the mootness doctrine. Even though an issue is moot, we will decide it when:

> 1. The issue is one of great public importance;
> 2. It is necessary to answer the issue to provide guidance to state agencies and lower courts; or

*Circuit Court of the Eighth Judicial Dist. v. Lee Newspapers*, 2014 WY 101, ¶ 12, 332 P.3d 523, 528 (Wyo. 2014) (quoting *Operation Save America*, 275 P.3d at 448-49).

[¶29]  In determining whether any of these exceptions to the mootness doctrine apply to this case, it is important to review the progress of this case.  The juvenile court originally placed CRA in shelter care with her maternal grandmother after a hearing.  DB did not challenge that placement.  Not long after that placement, the case was resolved by a consent decree.  When DB entered into the consent decree, he agreed that CRA could remain in DFS custody for placement with her maternal grandmother.  He agreed with the consent decree goal of involving both EA and CRA in a plan to reunite them.  On four separate occasions while the consent decree was pending, DB represented, through multidisciplinary team reports and the consent decree, that CRA should remain with her grandmother.  This is the setting DB created and in which he attempts to raise his constitutional claim to temporary custody of CRA.

[¶30]  The first exception to the mootness doctrine permits the Court to consider issues of great public importance.  Ordinarily, protection of the parent-child relationship is of great public importance.  In many circumstances the parent-child relationship is constitutionally protected.  DB argues that temporary placement of his daughter interfered with his constitutional rights as a parent.  The State, on the other hand, asserts that juvenile neglect cases do not interfere with constitutional rights of parents because they are temporary, remedial, and intended to support parent-child relationships.  We decline to consider whether temporary placement of a juvenile in a neglect case qualifies for this mootness exception because DB's claim about his constitutional right to parent his child is in direct opposition to the position he agreed to in the consent decree.  In context, he is simply complaining that he does not like the deal he made in the consent decree, and he asks this Court to re-write it.  The issue here does not truly involve DB's constitutional rights as a parent, but rather involves his dissatisfaction with the consent decree.  That issue is not a matter of such great public importance that it justifies this Court making an advisory ruling.

[¶31]  The second exception to the mootness doctrine recognizes that the Court, at times, should give guidance to lower courts and state agencies.  This is not such a time.  We see no need to give any guidance to either the juvenile court or to DFS in the context of this case because it was entirely controlled by a consent decree.  In the consent decree all the parties, including DB, agreed to work toward reuniting CRA with EA by temporarily placing CRA with her grandmother and DFS providing services to EA and CRA.  The

parties themselves developed that plan. The situation does not call for guidance to the juvenile court nor to DFS.[8]

[¶32] We recognize the third exception to the mootness doctrine when a controversy is capable of repetition yet evading review. Two requirements must be met for this exception to apply. "First, the duration of the challenged action must be too short for completion of litigation prior to its cessation or expiration. Second, there must be a reasonable expectation that the same complaining party will be subjected to the same action again." *KO*, ¶ 28, 138 P.3d at 1154.

[¶33] Wyoming's Child Protection statutes intend for the case to be relatively short, and any placement of a child outside his or her home to be temporary. It is possible that a temporary placement in a neglect case could end before appellate review is complete. However, there is no reasonable expectation that DB will again be in the same position as he was during the consent decree. If the district court continues custody of CRA with EA, there is no reasonable expectation that temporary custody would again be required under a neglect case, or that DB would enter into a consent decree. Consequently, we find that the third exception to the mootness doctrine does not apply.

[¶34] The issue DB raises about custody of CRA during the pendency of the juvenile neglect case is moot. We decline to address that issue because any determination we make would be wholly advisory, having no impact on any party.

## CONCLUSION

[¶35] Once a neglect action is held in abeyance under a consent decree, the county attorney or district attorney has the sole discretion to end the case or to pursue reinstatement. Neither the Wyoming Child Protection Act nor the consent decree in this case requires any hearing or findings for discharge upon a motion from the county attorney or district attorney. Consequently, the juvenile court properly discharged the parties from their consent decree upon the motion of the county attorney, without a hearing and without making findings.

[¶36] DB asserts that the temporary placement of CRA, which he approved, violates his constitutional rights to parent. The temporary placement ended, the underlying juvenile case was dismissed, and DB had a full opportunity to make his custody claim in the district court. DB's claim regarding temporary custody during the juvenile case is moot, and we decline to address it.

---

[8] Although juvenile placement in neglect cases is temporary, the juvenile court and DFS must follow the law even for that temporary period. The record shows numerous procedural matters which might raise questions about how the law was followed. In its brief the State argued that § 14-3-413 (v) makes placement of a child with a noncustodial parent optional and permissive, but not required. Absent a consent decree, such matters might suffice for the second exception to the mootness doctrine.

[¶37]  Affirmed.