# IN THE SUPREME COURT, STATE OF WYOMING

# 2022 WY 43

### OCTOBER TERM, A.D. 2021

**March 31, 2022**

JILL REBECCA AILPORT and
SHANE ARTHUR AILPORT,

Appellants
(Petitioners),

v.

TRAVIS AILPORT; SHELLEY
AILPORT; DUSTIN AILPORT; LEXIE
AILPORT and JESSICA LESSER,

Appellees
(Respondents).

S-21-0166

*Appeal from the District Court of Converse County*
The Honorable F. Scott Peasley, Judge

*Representing Appellants:*

Anna Reeves Olson, Park Street Law Office, Casper, Wyoming; Tyler J. Garrett, Hathaway & Kunz LLP, Cheyenne, Wyoming. Argument by Ms. Olson and Mr. Garrett.

*Representing Appellees:*

Judith Studer, Elizabeth B. Grill, and Patrick T. Holscher of Schwartz, Bon, Walker & Studer, LLC, Casper, Wyoming. Argument by Ms. Studer and Ms. Grill.

*Before FOX, C.J., and DAVIS\*, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

*\*Justice Davis retired from judicial office effective January 16, 2022, and, pursuant to Article 5, § 5 of the Wyoming Constitution and Wyo. Stat. Ann. § 5-1-106(f) (LexisNexis 2021), he was reassigned to act on this matter on January 18, 2022.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]    Jill Rebecca Ailport and Shane Arthur Ailport (collectively referred to as "Grandparents") are the grandparents of five children (collectively referred to as "Children"). They filed a petition against the parents of Children—Travis Ailport, Shelley Ailport, Dustin Ailport, Lexie Ailport, and Jessica Lesser (collectively referred to as "Parents")—to establish visitation under the grandparent visitation statute, Wyo. Stat. Ann. § 20-7-101 (LexisNexis 2021). The district court ruled Grandparents did not prove their right to visitation under the statute and denied their petition. We affirm on somewhat different grounds than those relied upon by the district court.

## ISSUES

[¶2]    Although Grandparents state different issues for our review, we conclude resolution of the following issues is necessary to decide this appeal:

1.      Did the district court adequately protect Parents' fundamental constitutional rights as parents in the action brought by Grandparents under § 20-7-101 to establish visitation with Children?

    a.      Were Grandparents required to establish Parents were unfit or Children would be harmed by Parents' visitation decisions to succeed on their petition?

    b.      Is the clear and convincing evidence standard of proof applicable to grandparent visitation actions?

2.      Did Grandparents meet their burden of proving they were entitled to court-ordered visitation in this case?

## FACTS

[¶3]    Travis and Dustin are Grandparents' sons, and they are married to Shelley and Lexie, respectively.[1]  Travis and Jessica Lesser were previously in a relationship and are CJA's parents. Travis and Shelley are CA and ZA's parents, and Dustin and Lexie are RA and BA's parents. In August 2019, a rift developed between Grandparents and Parents.

[¶4]    A few months later, Grandparents filed a petition against Parents under § 20-7-101 to establish visitation rights with Children. Grandparents claimed the district court was required to order visitation because it was in Children's best interests and it would not substantially impair Parents' rights. Parents opposed court-ordered visitation. While they agreed visitation with Grandparents was, in principle, in Children's best interests, they

---

[1] Because many of the parties have the same surname, we will refer to them by their first names.

1

wanted to retain the authority to decide when, where, and under what conditions visitation would take place. In general, Parents preferred to supervise the four younger Children's visitation with Grandparents because they were all under seven years old at the time of the trial and had spent little time alone with Grandparents. Travis, Jessica, and Shelley indicated a willingness to allow Grandparents more contact with CJA, who was older and had a more established relationship with them. On the other hand, Grandparents wanted to control the location and conditions of visitation with all the children through a court order.

[¶5] The district court adopted an enhanced best interest analysis to bring § 20-7-101 in accord with the substantive due process principles set out by the United States Supreme Court in *Troxel v. Granville,* 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000).[2] Applying the test, the district court concluded Grandparents had not met their burden of proving by clear and convincing evidence they were entitled to visitation over Parents' objections. Grandparents appealed. We will provide additional facts in our discussion of the issues.

## DISCUSSION

### *History of § 20-7-101*

[¶6] At common law, grandparents had no right to visitation with their grandchildren unless the parents allowed it. *Michael v. Hertzler,* 900 P.2d 1144, 1146 (Wyo. 1995) (citing *Matter of Adoption of RDS,* 787 P.2d 968 (Wyo. 1990)). *See also, Hede v. Gilstrap,* 2005 WY 24, ¶ 33, 107 P.3d 158, 172 (Wyo. 2005) (historically, grandparent visitation rights derived exclusively from parents) (citations omitted). In 1991, the Wyoming legislature created an original action for grandparents to seek court-ordered visitation with their grandchildren. *Michael,* 900 P.2d at 1147; § 20-7-101. The general justifications for grandparent visitation laws are:

> "It is [a] biological fact that grandparents are bound to their grandchildren by the unbreakable links of heredity. It is common human experience that the concern and interest grandparents take in the welfare of their grandchildren far exceeds anything explicable in purely biological terms. A very special relationship often arises and continues between grandparents and grandchildren. The tensions and conflicts which commonly mar relations between parents and children are often absent between those very same parents and their

---

[2] The district court informed the parties in a summary judgment order it would use the enhanced best interest test. Parents filed a petition for a writ of review from the district court's summary judgment order with this Court, but we denied it.

grandchildren. Visits with a grandparent are often a precious part of a child's experience and there are benefits which devolve upon the grandchild from the relationship with his grandparents which he cannot derive from any other relationship. Neither the Legislature nor this Court is blind to human truths which grandparents and grandchildren have always known."

*Goff v. Goff,* 844 P.2d 1087, 1090-91 (Wyo. 1993) (quoting *Mimkon v. Ford,* 332 A.2d 199, 204-05 (N.J. 1975)).

[¶7]   In *Michael*, we considered a substantive due process challenge to the 1994 version of Wyoming's grandparent visitation statute, which stated in relevant part:

(a) A grandparent may bring an original action against any person having custody of the grandparent's minor grandchild to establish reasonable visitation rights to the child if:

(i) The grandparent's child who is the parent of the minor grandchild has died or has divorced the minor grandchild's other parent and the person having custody of the minor grandchild has refused reasonable visitation rights to the grandparent; or

(ii) An unmarried minor grandchild has resided with the grandparent for a period in excess of six (6) consecutive months before being returned to the custody of the minor grandchild's parents and the parents have refused reasonable visitation rights to the grandparent.

(b) In any action or proceeding under subsection (a) of this section, the court may grant reasonable visitation rights to the grandparent of a child if the court finds, after a hearing, that visitation would be in the best interest of the child and that the rights of the child's parents are not substantially impaired.

*Michael*, 900 P.2d at 1144-45 (quoting Wyo. Stat. Ann. § 20-7-101 (1994)).   The substantive component of the due process clause in the Fourteenth Amendment to the United States Constitution

"bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Reiter* [*v. State*, 2001 WY 116,] ¶ 20, 36 P.3d [586, 592-

3

93 (Wyo. 2001)] (citations and quotation marks omitted); *see Laughter v. Bd. of Cnty. Comm'rs for Sweetwater Cnty.*, 2005 WY 54, ¶ 42, 110 P.3d 875, 887 (Wyo. 2005). We have principally adopted "the two-tiered scrutiny employed by the federal courts in analyzing substantive due process ... challenges." *Reiter*, ¶ 20, 36 P.3d at 593. If a statute affects a fundamental interest, we must strictly scrutinize that statute to determine if it is necessary to achieve a compelling state interest—often referred to as the strict scrutiny test. *Id.* On the other hand, if the statute simply affects ordinary interests in the economic and social welfare area, we only need to determine that it is rationally related to a legitimate state objective, which is often referred to as the rational basis test. *Id.*

*Vaughn v. State,* 2017 WY 29, ¶ 26, 391 P.3d 1086, 1095 (Wyo. 2017).

[¶8]    In *Michael*, 900 P.2d at 1148, we recognized parents have a fundamental due process right to raise their children as they see fit and make decisions regarding their associations without interference from the government. *See also, Meyer v. Neb.,* 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923) (liberty interest "denotes not merely freedom from bodily restraint" but also the right of any individual to establish a home and bring up children (citation omitted)).  Because § 20-7-101 interfered with these fundamental rights, we applied strict scrutiny to determine whether the statute satisfied due process.  *Michael,* 900 P.2d at 1148.  Strict scrutiny "demands identification of a compelling state interest.  The compelling state interest then must be balanced against the fundamental right, and the method of protecting that compelling state interest must be the least intrusive by which that interest can be accomplished." *Id.* (citing *State in the Interest of C,* 638 P.2d 165, 173 (Wyo. 1981)).  We held the State, in its role as *parens patriae,* has a compelling interest in protecting the health, safety, and welfare of children, which, under proper circumstances, may include fostering the relationship between grandparents and their grandchildren. *Id.* at 1149.

[¶9]    To balance the various interests at stake, § 20-7-101 (1994) required proof "visitation [was] in the best interest of the child and the rights of the child's parents [were] not substantially impaired."  *Id.* at 1151.  We ruled the statute was "sufficiently narrowly drawn" because it imposed procedural safeguards or standing requirements.  *Id.*  Only a grandparent could file for visitation and "[t]he circumstances [were] limited to an instance in which the grandparent's child, who is the parent, ha[d] died or ha[d] divorced the other parent, and the person [with] custody ha[d] refused reasonable visitation . . . [or] an unmarried minor grandchild [had] resided with the grandparent for more than six months before being returned to the custody of the grandchild's parents, and those parents ha[d] refused reasonable visitation rights." *Id.* (discussing § 20-7-101(a)(i), (ii) (1994)).

4

[¶10]  In 1997, the legislature enacted significant changes to § 20-7-101.  1997 Wyo. Sess. Laws ch. 71, § 2.  The current version of § 20-7-101(a) governs Grandparents' petition in this case and states:

> (a) A grandparent may bring an original action against any person having custody of the grandparent's minor grandchild to establish reasonable visitation rights to the child. If the court finds, after a hearing, that visitation would be in the best interest of the child and that the rights of the child's parents are not substantially impaired, the court shall grant reasonable visitation rights to the grandparent. . . .

Like the earlier iteration of the statute, § 20-7-101(a) continues to require grandparents to show visitation would be in the best interest of the child and parents' rights would not be substantially impaired by allowing such visitation.  However, the legislature deleted the procedural safeguards/standing requirements in § 20-7-101(a)(i) and (ii) (1994).

### *Troxel v. Granville*

[¶11]  Three years after the Wyoming legislature amended § 20-7-101, the United States Supreme Court weighed in on the issue of grandparent visitation in *Troxel v. Granville,* 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000).  The plurality opinion penned by Justice O'Connor affirmed the Washington supreme court's determination that the state's grandparent visitation statute was unconstitutional.  *Id.,* 530 U.S. at 75, 120 S.Ct. at 2065. The plurality described the Washington statute as "breathtakingly broad" because it allowed "any person," not just grandparents, to petition for visitation at "any time" and authorized the state's courts to order visitation whenever "visitation may serve the best interest of the child."  *Troxel,* 530 U.S. at 60, 67, 120 S.Ct. at 2057, 2061.

[¶12]  In ruling Washington's grandparent visitation statute violated the parent's right to due process of law, the *Troxel* Court made several key points.  First, "the interest of parents in the care, custody, and control of their children . . . is perhaps the oldest of the fundamental liberty interests recognized" under the due process clause of the United States Constitution.  *Id.,* 530 U.S. at 65, 120 S.Ct. at 2060 (citing *Meyer,* 262 U.S. at 399, 43 S.Ct. 625, *Pierce v. Society of Sisters,* 268 U.S. 510, 534-535, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), and *Prince v. Mass.,* 321 U.S. 158, 166, 64 S.Ct. 438, 88 L.Ed. 645 (1944)).  A majority of the Court agreed with this holding.  *See Troxel,* 530 U.S. at 65, 120 S.Ct. at 2060 (plurality opinion); *Id.,* 530 U.S. at 77, 120 S.Ct. at 2066 (Souter, J., concurring); *Id.,* 530 U.S. at 80, 120 S.Ct. at 2068 (Thomas, J., concurring).

[¶13]  Second, a simple weighing of the best interests of the children to establish grandparent visitation is insufficient to protect parents' liberty interest in rearing their children.  *Id.,* 530 U.S. at 67, 120 S.Ct. at 2061.  *See also, Doe v. Doe*, 172 P.3d 1067, 1077

(Haw. 2007) ("the best interest standard is insufficient in nonparental visitation proceedings" (quotation marks omitted)); *Rideout v. Riendeau,* 761 A.2d 291, 297 (Me. 2000) ("the best interests of the child standard, standing alone, is an insufficient standard for determining when the State may intervene in the decision making of competent parents" (citing *Troxel,* 530 U.S. at 67, 120 S.Ct. at 2061)).

[¶14] Third, fit parents are presumed to act in their children's best interests and their decisions regarding visitation with grandparents are entitled to "special weight" or deference. *Troxel,* 530 U.S. at 68-69, 120 S.Ct. at 2061-62 ("so long as a parent adequately cares for his or her children (*i.e.,* is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children" (citation omitted)). *See also, In re Adoption of CA*, 137 P.3d 318, 325-26 (Colo. 2006) (en banc) (*Troxel* requires "special weight" be given to parents' visitation decisions); *Hamit v. Hamit*, 715 N.W.2d 512, 523 (Neb. 2006) (noting *Troxel's* presumption that fit parents act in their children's best interests).

[¶15] Despite its recognition of parents' rights to rear their children as fundamental, the plurality in *Troxel* did not apply strict scrutiny in conducting its substantive due process analysis. *Troxel,* 530 U.S. at 65, 120 S.Ct. at 2060. The Supreme Court also found it unnecessary, in light of the statute's obvious overreach, to decide whether grandparents must show the child is or will be harmed by a lack of visitation. *Id.,* 530 U.S. at 73, 120 S.Ct. at 2064 ("Because we rest our decision on the sweeping breadth of [the statute] and the application of that broad, unlimited power in this case, we do not consider the primary constitutional question passed on by the Washington Supreme Court—whether the Due Process Clause requires all nonparental visitation statutes to include a showing of harm or potential harm to the child as a condition precedent to granting visitation."). Justice Thomas, in his concurring opinion, stated that, due to the fundamental nature of parents' rights, the Court should have undertaken a strict scrutiny review of the Washington statute. *Id.,* 530 U.S. at 80, 120 S.Ct. at 2068. However, he opined the Washington statute was so constitutionally infirm it lacked "even a legitimate governmental interest [for rational basis review]—to say nothing of a compelling one—in second-guessing a fit parent's decision regarding visitation with third parties." *Id.* (Thomas, J., concurring).

### *State Responses to Troxel – Two Approaches*

[¶16] In response to *Troxel,* state legislatures and courts throughout the country have taken steps to ensure their grandparent visitation statutes do not improperly interfere with parents' fundamental right to raise their children. There are two prevailing approaches used by courts to ensure grandparent visitation statutes are consistent with *Troxel's* due process requirements. *Moriarty v. Bradt,* 827 A.2d 203, 218 (N.J. 2003); *CA,* 137 P.3d at 325. The first approach avoids identifying a level of due process scrutiny and typically does not require a showing the child is or will be harmed by a lack of grandparent visitation.

*Moriarty,* 827 A.2d at 218-19. *See, e.g., CA,* 137 P.3d at 328-29; *Polasek v. Omura,* 136 P.3d 519, 523 (Mont. 2006); *Walker v. Blair,* 382 S.W.3d 862 (Ky. 2012). Courts analyze the constitutionality of grandparent visitation statutes by comparing them to the Washington statute at issue in *Troxel. Moriarty,* 827 A.2d at 219-20 (collecting cases). To incorporate the substantive due process requirements of *Troxel,* the courts simply alter the weighing process used to balance multiple factors related to the best interests of the child by giving "special weight" to the parents' visitation decision and identifying "special factors" upon which the grandparent visitation order is based. *CA,* 137 P.3d at 326-28 (citations and quotation marks omitted). *See also, Polasek,* 136 P.3d at 523 ("The close scrutiny that we apply to any infringement on a person's right to parent a child requires that the petitioning grandparent prove by clear and convincing evidence that it is in the child's best interest to have contact with the grandparent, and, in the case of an objecting fit parent, that the presumption in favor of the parent's wishes has been rebutted.") (citations omitted); *Walker,* 382 S.W.3d at 868-70 (approving a "modified best interest standard" which incorporated a presumption in favor of fit parents' decisions on grandparent visitation).

[¶17] The Colorado Supreme Court used the first approach to analyze that state's grandparent visitation statute in *CA. CA,* 137 P.3d at 322 (discussing Colo. Rev. Stat. § 19-1-117 (2005)). Unlike the "breathtakingly broad" statute in *Troxel*, which allowed "any person" to apply for visitation rights with a child, the Colorado statute significantly narrowed the situations where grandparent visitation could be ordered by requiring a showing that the parents' marriage had been dissolved, someone other than a parent had custody of the child, or the child's parent (who is the child of the grandparent) had died. *Id.* at 322, 326. Following the lead of *Troxel,* the *CA* court did not articulate or employ typical due process review. *Id.* at 325. Instead, it explained the due process requirements imposed on grandparents seeking visitation as:

> [I]n order to effectuate the General Assembly's intent consistent with *Troxel,* we construe Colorado's statute to contain a presumption that parental determinations about grandparent visitation are in the child's best interests. *See Troxel,* 530 U.S. at 67, 120 S.Ct. 2054 ("[T]here is a presumption that fit parents act in the best interests of their children."). However, this presumption is rebuttable in the context of a section 19–1–117 petition when the grandparent articulates facts in the petition and goes forward with clear and convincing evidence at a hearing that the parent is unfit to make the grandparent visitation decision, or that the visitation determination the parent has made is not in the best interests of the child. If the grandparent meets this evidentiary burden, the burden then shifts to the parent to adduce evidence in support of the parental determination. The grandparent bears the

7

ultimate burden of proving by clear and convincing evidence that the parental determination is not in the child's best interests and the visitation schedule grandparent seeks is in the child's best interests.

*Id.* at 327-28.

[¶18] The second approach applies traditional strict scrutiny due process review to grandparent visitation statutes. *See Moriarty,* 827 A.2d at 218-19. Grandparents must overcome the presumption in favor of parental decision-making and establish the state has a compelling interest in granting grandparent visitation. *Id.* at 218. To do so, they must show the parents are unfit or the child is or will be harmed by the denial of visitation. *Moriarty,* 827 A.2d at 218-19. *See also, CA,* 137 P.3d at 325 (under the second approach, parental wishes are entitled to "extreme deference" and the state may "override[] parental wishes only if the parent is unfit to make the decision or when denying visitation would harm or substantially harm the child's emotional health.").

[¶19] *Moriarty* illustrates the second approach. The New Jersey grandparent visitation statute required grandparents to prove visitation was in the best interests of the child and included a list of best interest factors for the courts' consideration. *Moriarty,* 827 A.2d at 212. Because the grandparent visitation statute interfered with parents' fundamental right to raise their children, *Moriarty* employed a strict scrutiny due process review. *Id.* at 214. *See also, Hiller v. Fausey,* 904 A.2d 875, 883-85 (Pa. 2006) (although the Supreme Court declined in *Troxel* to articulate a level of scrutiny to review an infringement of the parents' fundamental right to direct the care, custody, and control of their children, "this Court traditionally has applied a strict scrutiny analysis to asserted violations of fundamental rights protected by the Due Process Clause"). The *Moriarty* court ruled the only interest sufficiently compelling to justify state interference with a fit parent's presumptively proper decision regarding grandparent visitation was "avoidance of harm to the child" and imposed a burden on grandparents to prove visitation was necessary to prevent such harm. *Moriarty,* 827 A.2d at 223-24. *See also, Doe,* 172 P.3d at 1069, 1080 (Hawaii's grandparent visitation statute, which required only a showing that grandparent visitation was in the best interests of the children, could not pass strict scrutiny unless the grandparents showed the child would suffer significant harm in the absence of visitation.); *In re Herbst,* 971 P.2d 395, 398 (Okla. 1998) ("Without the requisite harm or unfitness, the state's interest does not rise to a level so compelling as to warrant intrusion upon the fundamental rights of parents."); *Lamberts v. Lillig,* 670 N.W.2d 129, 133 (Iowa 2003) (Iowa's grandparent visitation statute did not meet strict scrutiny demands, in part, because it did not require the grandparent to show the parent was unfit or the child would be harmed by a lack of visitation); *Blixt v. Blixt,* 774 N.E.2d 1052, 1061 (Mass. 2002) (the Massachusetts supreme court imposed the requirement for grandparents to prove "the failure to grant visitation will cause the child significant harm by adversely affecting the child's health, safety, or welfare").

[¶20]  The *Moriarity* court did not definitively state what type of evidence would be sufficient to establish harm to a child from the parents' presumptively proper decision regarding grandparent visitation, noting the "possibilities are as varied as the factual scenarios presented." *Moriarty,* 827 A.2d at 223-24.  However, it provided examples of evidence which might, under the specific circumstances of a given case, establish harm, including when a surviving parent restricts a child's contact with grandparents after the death of a parent, the breakup of the child's home through divorce or separation, and/or the termination of a long-standing relationship between the grandparents and the child.[3]  *Id. See also, Roth v. Weston,* 789 A.2d 431, 445 (Conn. 2002) (proof of substantial emotional ties between a child and a grandparent could provide a basis for ruling the child is or will be harmed by the parents' decision to disallow visitation); *Blixt,* 774 N.E.2d at 1060 ("[t]he requirement of significant harm presupposes proof of a showing of a significant preexisting relationship between the grandparent and the child").

[¶21]  If grandparents establish the parents are unfit or the child is or will be harmed by the parents' visitation decision, "the presumption in favor of parental decision making will be deemed overcome" and "the court should approve a [visitation] schedule that it finds is in the child's best interest" using the factors set out in the New Jersey statute.  *Moriarty,* 827 A.2d at 224.  The *Moriarty* court explained, "[o]ur resolution results in sustaining the statute by adding a threshold harm standard that is a constitutional necessity because a parent's right to family privacy and autonomy [is] at issue."  *Id.*  With these principles in mind, we return to Wyoming's grandparent visitation statute.

### *Application of Constitutional Principles to § 20-7-101*

[¶22]  Statutory interpretation is a question of law reviewed de novo.  *Williams v. Sundstrom,* 2016 WY 122, ¶ 19, 385 P.3d 789, 794 (Wyo. 2016) (citing *Clark v. State ex rel. Dep't of Workforce Servs.,* 2016 WY 89, ¶ 10, 378 P.3d 310, 313 (Wyo. 2016), and *DB v. State (In re CRA),* 2016 WY 24, ¶ 15, 368 P.3d 294, 297 (Wyo. 2016)).  "When interpreting a statute and its application, we first look at the plain language used by the legislature.  If the [statutory language] is sufficiently clear and unambiguous, the Court simply applies the words according to their ordinary and obvious meaning."  *In re CRA,* ¶ 16, 368 P.3d at 298 (citing *MR v. State (In re CDR),* 2015 WY 79, ¶ 19, 351 P.3d 264, 269 (Wyo. 2015)).

---

[3] Notably, the types of harm described by *Moriarty* are similar to the standing requirements in many states' statutes, including some jurisdictions which follow the first approach to *Troxel* and do not require a threshold showing of harm.  *See, e.g., CA,* 137 P.3d at 322-23 (Colorado's statute required a threshold showing the parents' marriage had been dissolved, the child was in the legal custody of a third party, or one of the parents had died); *Jackson v. Tangreen,* 18 P.3d 100, 103 (Ariz. Ct. App. 2000) (Arizona statute required a threshold showing by the grandparents that the parents' marriage had been dissolved, one of the parents was deceased or missing, or the child was born out of wedlock).  In this respect, the two approaches to determining the constitutionality of grandparent visitation statutes are not that different.

[¶23]  The plain language of § 20-7-101(a) allows grandparents to bring an original action to establish reasonable visitation rights against any person having custody of their minor grandchild.  It states the court shall grant grandparents visitation if it would be in the best interests of the child and the rights of the child's parents are not substantially impaired.  *Id.*

[¶24]  Grandparents maintain their petition met the clear requirements of § 20-7-101(a).  According to them, Parents admitted visitation was in the best interests of Children and the record shows that court-ordered visitation, while interfering to some extent with Parents' time, would not substantially impair their rights.  Because the statute uses the mandatory term "shall" and they met its requirements, Grandparents surmise the court was required to grant their request for visitation.

[¶25]  Grandparents' argument largely ignores that the statute must be read consistently with *Troxel* to satisfy due process.  If § 20-7-101(a) is interpreted in the manner they advocate, it does not protect parents' fundamental right to rear their children as they think proper.  Under Grandparents' interpretation, there is no presumption that fit parents act in the best interests of their children and no special weight is given to parental decisions regarding grandparent visitation.

[¶26]  The district court recognized § 20-7-101 lacks procedural safeguards to make it consistent with *Troxel's* due process mandates.  However, it rejected the second approach to interpreting grandparent visitation statutes, which requires grandparents to establish the parents are unfit or the child is or will be harmed by restricting visitation, because the legislature did not incorporate those requirements into the statute.  Instead, the court generally followed the first approach and imposed an enhanced best interest test designed to protect parental decision-making.  In determining the appropriate best interest factors, the district court looked to the decisions of the Kentucky supreme court in *Walker v. Blair,* 382 S.W.3d 862, 871 (Ky. 2012) and *Pinto v. Robison,* 607 S.W.3d 669, 674 (Ky. 2020), and the New Mexico supreme court in *Lucero v. Hart,* 907 P.2d 198, 203-04 (N.M. 1995).[4]

---

[4] The best interest factors adopted by the district court were:

   1) the nature and stability of the relationship between the child and the grandparent seeking visitation;
   2) the amount of time the grandparent and child spent together;
   3) the potential detriments and benefits to the child from granting visitation;
   4) the effect granting visitation would have on the child's relationship with the parents;
   5) the physical and emotional health of all the adults involved, parents and grandparents alike;
   6) the stability of the child's living and schooling arrangements;
   7) the wishes and preferences of the child;
   8) the motivation of the adults participating in the grandparent visitation proceedings;
   9) the love, affection, and other emotional ties which may exist between the grandparent and child;
   10) the physical, emotional, mental, and social needs of the child;
   11) the wishes and opinions of the parents;
   12) the willingness and ability of the grandparent to facilitate and encourage a close relationship between

[¶27] The cases the district court relied upon in developing its best interest factors did not apply a typical strict scrutiny due process analysis. While it was reasonable for the Supreme Court to use this type of vague constitutional analysis in *Troxel* given the obvious constitutional infirmities in the Washington statute, we do not believe it is appropriate here. As we recognized in *Michael,* the plain language of § 20-7-101 contemplates state interference with parents' fundamental right to rear their children; therefore, the statute will satisfy due process only if it passes strict scrutiny. *Michael,* 900 P.2d at 1146-47 (citing *DS v. Dep't of Pub. Assistance and Social Servs.,* 607 P.2d 911, 918 (1980)). To reiterate, a statute impacting a fundamental right is constitutional under strict scrutiny only if it is necessary to achieve a compelling state interest and the method of protecting the state's interest is the least intrusive necessary to accomplish the goal. *Vaughn*, ¶ 26, 391 P.3d at 1095; *Reiter*, ¶ 20, 36 P.3d at 592-93; *Michael,* 900 P.2d at 1147.

[¶28] The current version of § 20-7-101(a) does not include the specific procedural safeguards mentioned in *Michael,* incorporate a presumption that parental decisions are in the child's best interests in accordance with *Troxel*, or require grandparents to show the parents are unfit or the child is or will be harmed by a lack of visitation as required to establish a compelling state interest under strict scrutiny review. Grandparents argue that, under standard statutory interpretation principles, courts should not read additional requirements into a statute. They emphasize the legislature made an intentional choice to remove the procedural safeguards in the earlier version of the statute. We agree those principles would typically govern our analysis. *See, e.g., WyoLaw, LLC v. Off. of Att'y Gen., Consumer Prot. Unit,* 2021 WY 61, ¶ 44, 486 P.3d 964, 976 (Wyo. 2021) ("court[s] may not add language to a statute under 'the guise of statutory interpretation'" (quoting *Delcon Partners LLC v. Wyo. Dep't of Revenue*, 2019 WY 106, ¶ 10, 450 P.3d 682, 685 (Wyo. 2019))); *Ramsour v. Grange Ins. Ass'n,* 541 P.2d 35, 38 (Wyo. 1975) (courts "cannot stretch, extend, enlarge nor amend what the legislature has clearly said" (citing *Lo Sasso v. Braun*, 386 P.2d 630, 632 (Wyo. 1963))).

[¶29] However, we must search for legislative intent that is consistent with constitutional principles.

> "Our rules of statutory interpretation require that we, in seeking legislative intent, must find a consistent and realistic intendment which includes the presumed desire of the legislature to recognize its legislative duty to act constitutionally." *Appleby v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2002 WY 84, ¶ 28, 47 P.3d 613, 622 (Wyo.

the parent and child; and
13) any other factors the court deems necessary and relevant.

11

2002). See also *Kunkle v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2005 WY 49, ¶ 11, 109 P.3d 887, 890 (Wyo. 2005). That duty includes "providing for constitutionally guaranteed interests." *Parker Land & Cattle Co. v. Wyoming Game & Fish Comm'n,* 845 P.2d 1040, 1081 (Wyo. 1993). As a reviewing court, we have a duty to uphold the constitutionality of statutes which the legislature has enacted if that is at all possible, and any doubt must be resolved in favor of constitutionality. *In re Adoption of RHA,* 702 P.2d 1259, 1265 (Wyo.1985).

*In re Guardianship of MEO,* 2006 WY 87, ¶ 19, 138 P.3d 1145, 1151 (Wyo. 2006). *See also, Troxel,* 530 U.S. at 67, 120 S.Ct. at 2061 ("The Washington Supreme Court had the opportunity to give [that state's grandparent visitation statute] a narrower reading, but it declined to do so."); *Moriarty,* 827 A.2d at 224 ("where necessary to save a statute, 'appropriate construction [to] restore [it] to health' is a well-established rule" (quoting *First Family Mortgage Corp. v. Durham,* 108 N.J. 277, 290, 528 A.2d 1288 (1987), *appeal dismissed,* 487 U.S. 1211, 108 S.Ct. 2860, 101 L.Ed.2d 897, *and cert. dismissed,* 487 U.S. 1213, 108 S.Ct. 2863, 101 L.Ed.2d 899 (1988))); *Blixt,* 774 N.E.2d at 1060 ("an appellate court may, in an appropriate case, construe a statute to render it constitutional").

[¶30] Although the legislature removed from § 20-7-101 the procedural protections we deemed important in *Michael*, it retained language which respects the role of parents by requiring that any court-ordered grandparent visitation not substantially impair the rights of the parents. § 20-7-101(a). To interpret this statutory language consistent with constitutional principles, the grandparents must show the State has a compelling interest in interfering with the parents' rights by requiring proof the parents are unfit or their visitation decision is harmful to the child. *Moriarty,* 827 A.2d at 218. This threshold requirement ensures the parents' decision is given "special weight" in accordance with *Troxel's* directive. *Troxel,* 530 U.S. at 68-69, 120 S.Ct. at 2061-62. Only after the grandparents have shown a compelling state interest in mandating visitation may the court consider what visitation will best serve the interests of the child. *See Troxel,* 530 U.S. at 67, 120 S.Ct. at 2061 (simply weighing the best interests of the children to establish grandparent visitation is insufficient to protect the parents' liberty interest in rearing their children); *Doe,* 172 P.3d at 1077 ("the best interest standard is insufficient in nonparental visitation proceedings" (other citations omitted)); *Rideout,* 761 A.2d at 297 ("the best interests of the child standard, standing alone, is an insufficient standard for determining when the State may intervene in the decision making of competent parents" (other citations omitted)).

[¶31] As we stated in *Michael,* the best interests standard is well recognized in the law. *Michael,* 900 P.2d at 1151. The legislature elected to enumerate the factors for determining the best interests of the child in custody disputes between parents. *See* Wyo. Stat. Ann. §

20-2-201 (LexisNexis 2021).  The legislature did not, however, choose to set out specific best interest factors in the context of grandparent visitation. § 20-7-101.  The lack of specific factors is not unique to the grandparent visitation statute.  The same approach can be found in other statutes where the court is required to determine the best interests of the child without specific legislatively adopted factors.  *See, e.g.,* Wyo. Stat. Ann. § 14-3-431(k)(i) (LexisNexis 2021) (the court makes the determination of whether a permanency plan in a juvenile case is in the "best interest of the child"); Wyo. Stat. Ann. §§ 1-22-108(c)(iv) & 1-22-111(a) (best interest considerations in adoption statutes).  *See also, In re NRAE,* 2020 WY 121, ¶ 14, 472 P.3d 374, 378 (Wyo. 2020) (requiring consideration of the best interests of the child in parental rights termination cases).  We, therefore, conclude the district court may determine best interests in accordance with its familiar role without considering any particular list of factors.

[¶32]  However, *Troxel* indicated a court ordering grandparent visitation must identify the "special factors" it relies upon to justify state interference with parents' rights to make visitation decisions.  *Troxel,* 530 U.S at 68, 120 S.Ct. at 2061.  *See also, CA,* 137 P.3d at 324 (*Troxel* faulted the trial court for failing to base its grandparent visitation order on any "special factors" which would justify the state's interference with the parent's fundamental right to make decisions on the rearing of her children); *Moriarty,* 827 A.2d at 217 ("'Four Justices (O'Connor, Rehnquist, Ginsburg, and Breyer) agreed that "special factors" must "justify" the state's intrusion'" in the parent-child relationship (quoting *Linder v. Linder,* 72 S.W.3d 841, 852-55 (Ark. 2002))).  District courts must, therefore, include detailed findings of fact and conclusions of law when granting grandparent visitation.

[¶33]  The district court's legal determination that Grandparents were not required to establish the parents were unfit or Children were or would be harmed by Parents' visitation decisions was incorrect.  However, as we will explain below, because Grandparents did not satisfy their burden of showing parental unfitness or harm to Children, the district court correctly denied their petition.

### *Standard of Proof – Clear and Convincing Evidence*

[¶34]  Before we address the record in this case, we will address an issue raised by Grandparents on appeal about whether the clear and convincing or preponderance of the evidence standard of proof is more appropriate in grandparent visitation cases.  The district court required Grandparents to prove their case by clear and convincing evidence.  They do not claim the court's decision was mistaken or advocate for the lesser standard of proof.  Although this issue is not essential to the resolution of this case, in the interest of completeness, we will address it.

[¶35]  "Whether the district court applied the correct burden of proof is . . . a question of law which we review *de novo.*"  *In re Guardianship of JR,* 2016 WY 37, ¶ 7, 368 P.3d 910, 911 (Wyo. 2016) (citing *Wise v. Ludlow,* 2015 WY 43, ¶ 19, 346 P.3d 1, 7 (Wyo. 2015)).

We agree with the district court that the clear and convincing evidence standard of proof applies to grandparent visitation cases because of the effect a grandparent visitation order will have on parents' fundamental right to rear their children. "'Clear and convincing evidence is that kind of proof that would persuade a trier of fact that the truth of a contention is highly probable.'" *In re JPL,* 2021 WY 94, ¶ 21, 493 P.3d 174, 180 (Wyo. 2021) (quoting *Harmon v. State of Wyo., Dep't of Family Servs. (In re DKS)*, 2020 WY 12, ¶ 19, 456 P.3d 918, 924 (Wyo. 2020)) (other citation omitted). As we explained in *In re JPL,*

> "'[d]ue to the tension between the fundamental liberty of familial association and the compelling state interest in protecting the welfare of children, application of statutes for termination of parental rights is a matter for strict scrutiny. As part of this strict scrutiny standard, a case for termination of parental rights must be established by clear and convincing evidence.'"

*Id.,* ¶ 21, 493 P.3d at 179-80 (quoting *Harmon*, ¶ 19, 456 P.3d at 924) (other citation omitted). While the impact of a grandparent visitation order on the parent-child relationship is arguably not as significant as the impact caused by the termination of parental rights, the Constitution nevertheless protects parents' fundamental right to direct the rearing of their children. The clear and convincing standard of proof aids in providing that protection.

### District Court's Denial of Grandparents' Visitation Petition

[¶36] After a bench trial, the district court determined Grandparents had not met their burden of proving by clear and convincing evidence they were entitled to court-ordered visitation under § 20-7-101(a). Grandparents claim this ruling is contrary to the overwhelming weight of the evidence. We review the district court's factual determinations for "clear error and its conclusions of law de novo." *Wheeldon v. Elk Feed Grounds House, LLC,* 2021 WY 71, ¶ 11, 488 P.3d 916, 919 (Wyo. 2021). *See also, Winney v. Hoback Ranches Prop. Owners Improvement & Serv. Dist.,* 2021 WY 128, ¶ 61, 499 P.3d 254, 269 (Wyo. 2021) ("Normally, we review a district court's factual findings following a bench trial for clear error, reversing only if we are left with a 'definite and firm conviction that a mistake has been committed.'" (quoting *Davis v. Harmony Dev., LLC*, 2020 WY 39, ¶ 31, 460 P.3d 230, 240 (Wyo. 2020), and *Ekberg v. Sharp*, 2003 WY 123, ¶ 10, 76 P.3d 1250, 1253 (Wyo. 2003) (other citations omitted)). "[W]e examine the evidence in the light most favorable to the party prevailing below, assuming all favorable evidence to be true while discounting conflicting evidence presented by the unsuccessful party." *In re JPL,* ¶ 21, 493 P.3d at 180 (citations omitted).

[¶37] We need not wade into the myriad of factual disputes over the ongoing family disagreement or the cause of the original rift between Parents and Grandparents. Many, if

14

not all, of Grandparents' arguments depend upon their version of the factual record, which is contrary to our standard of review. As we said above, parental decisions about their children's visitation with grandparents are presumed to be in the children's best interests and are entitled to deference unless the parents are not fit or the evidence establishes the parents' decisions are or will be harmful to the children. The district court found Parents were fit. That finding is undisputed on appeal and, in fact, Grandparents admitted at trial that Parents were fit.

[¶38] Grandparents also failed to establish by clear and convincing evidence Children were or would be harmed by Parents' desire to retain authority to make visitation decisions without being bound by a court order. Grandparents focus on the fact that Parents agreed some type of grandparent visitation was in Children's best interests. That is true; however, Grandparents did not present evidence establishing Parents' desire to make visitation decisions without being bound to a set court order was harmful to Children.

[¶39] Grandparents testified they preferred unsupervised visitation at their home because that is where they would be more "comfortable" and they want to avoid "tension" and feeling "judged" and "awkward" while in Parents' presence. The relative comfort of Grandparents during visitation was not the focus. The focus was on whether Parents' visitation decision was harmful to Children. As the district court found, Parents established the four younger Children did not have a history of regular contact with Grandparents outside Parents' presence. Most of these Children's interactions with Grandparents occurred during activities with Parents nearby. Grandparents did not, therefore, establish the younger Children would be harmed by Parents' decision that visitation should be closely monitored. To the contrary, the evidence can logically be interpreted as showing the younger Children could be harmed by being required to visit Grandparents without the security of Parents' presence. Parents' decision in that regard is entitled to deference.

[¶40] The district court found, and the evidence confirms, the older child, CJA, did have a significant historical relationship with Grandparents. He and Travis lived with Grandparents for a period of time when he was quite young, and he has had many interactions with Grandparents without his parents present. After the rift with Parents, Grandparents' contact with CJA was more limited than in the past, but Grandparents have had opportunities to spend time with him. Viewing the evidence in the light most favorable to Parents, Grandparents did not establish CJA was harmed by Parents' visitation decision. Therefore, Grandparents failed to overcome the presumption that Parents' decisions were appropriate and in CJA's best interests.

[¶41] The court found Parents had given Grandparents opportunities to visit Children on Parents' terms, usually under supervision at Parents' homes. Grandparents took advantage of a few of those opportunities but declined others. Grandparents also did not regularly make an effort to visit with Children on the phone or via Facetime, even though Parents allowed such contact.

15

[¶42] Grandparents assert it was improper for the district court to consider that Parents had not denied them visitation because the legislature chose to delete that requirement when it amended § 20-7-101 in 1997. We disagree. *Troxel* discussed a similar circumstance. There was "no allegation that [the mother] ever sought to cut off visitation entirely. Rather, the . . . dispute originated when [the mother] informed the [grandparents] that she would prefer to restrict their visitation with [the grandchildren]." *Troxel,* 530 U.S. at 71, 120 S.Ct. at 2062-63. The Supreme Court criticized the Washington trial court for giving "no weight to [the mother] having assented to visitation even before the filing of the visitation petition or subsequent court intervention." *Id.,* 530 U.S. at 71, 120 S.Ct. at 2063. When viewed within the paradigm we have adopted to protect parents' fundamental right to rear their children, the fact Parents had not denied visitation to Grandparents was a valid consideration in determining whether Children were harmed by Parents' visitation decisions. *See Moriarty,* 827 A.2d at 224 ("[w]hen visitation is not denied outright but the grandparents challenge the sufficiency of the proffered schedule . . . [t]hey will be required to prove that visitation is necessary and that the proffered visitation schedule is inadequate to avoid harm to the child"). In sum, Grandparents did not prove by clear and convincing evidence that Children were harmed by Parents' visitation decisions. The district court's denial of Grandparents' petition for visitation with Children is fully supported by the record.

**CONCLUSION**

[¶43] Parents have a fundamental due process right to guide the upbringing of their children, including determining the level of contact with their grandparents. To satisfy strict scrutiny, § 20-7-101 must be interpreted to protect parents' fundamental right by requiring grandparents to prove parents are unfit to make visitation decisions for their children or the parents' visitation decisions are or will be harmful to the children. Only after the grandparents make that threshold showing by clear and convincing evidence may the district court determine what visitation is in the best interests of the children. Grandparents in this case did not meet their burden of establishing Parents were unfit or made visitation decisions harmful to Children. The district court's denial of Grandparents' petition is, therefore, affirmed.

16